(Slip Opinion)

OCTOBER TERM, 2016

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM *v.* ANZ SECURITIES, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 16–373. Argued April 17, 2017—Decided June 26, 2017

Section 11 of the Securities Act of 1933 gives purchasers of securities "a right of action against an issuer or designated individuals," including securities underwriters, for any material misstatements or omissions in a registration statement. *Omnicare, Inc.* v. *Laborers Dist. Council Constr. Industry Pension Fund*, 575 U. S. \_\_\_, \_\_\_; see 15 U. S. C. §77k(a). Section 13 provides two time limits for §11 suits. The first sentence states that an action "must be brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . ." The second sentence provides that "[i]n no event shall any such action be brought . . . more than three years after the security was bona fide offered to the public . . . ." §77m.

In 2007 and 2008, Lehman Brothers Holdings Inc. raised capital through several public securities offerings. Petitioner, the largest public pension fund in the country, purchased some of those securities; and it is alleged that respondents, various financial firms, are liable under the Act for their participation as underwriters in the transactions. In 2008, a putative class action was filed against respondents in the Southern District of New York. The complaint raised §11 claims, alleging that the registration statements for certain of Lehman's 2007 and 2008 securities offerings included material misstatements or omissions. Because the complaint was filed on behalf of all persons who purchased the identified securities, petitioner was a member of the putative class.

In February 2011, more than three years after the relevant securities offerings, petitioner filed a separate complaint against respondents in the Northern District of California, alleging violations identi-

2          CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT
SYSTEM *v.* ANZ SECURITIES, INC.

Syllabus

cal to those in the class action on petitioner's own behalf. Soon
thereafter, a proposed settlement was reached in the putative class
action, but petitioner opted out of the class. Respondents then moved
to dismiss petitioner's individual suit, alleging that the §11 violations
were untimely under the 3-year bar in the second sentence of §13.
Petitioner countered that the 3-year period was tolled during the
pendency of the class-action filing, relying on *American Pipe & Con-
struction Co.* v. *Utah*, 414 U. S. 538. The trial court disagreed, and
the Second Circuit affirmed, holding that *American Pipe*'s tolling
principle is inapplicable to the 3-year bar. It also rejected petitioner's
alternative argument that the timely filing of the class action made
petitioner's individual claims timely as well.

*Held*: Petitioner's untimely filing of its individual complaint more than
three years after the relevant securities offering is ground for dismis-
sal. Pp. 4–17.

(a) Section 13's 3-year time limit is a statute of repose not subject
to equitable tolling. Pp. 4–14.

(1) The two categories of statutory time bars—statutes of limita-
tions and statutes of repose—each have "a distinct purpose." *CTS
Corp.* v. *Waldburger*, 573 U. S. ___, ___. Statutes of limitations are
designed to encourage plaintiffs "'to pursue diligent prosecution of
known claims,'" *id.,* at ___, while statutes of repose "effect a legisla-
tive judgment that a defendant should 'be free from liability after the
legislatively determined period of time,'" *id.,* at ___. For this reason,
statutes of limitations begin to run "when the cause of action ac-
crues," while statutes of repose begin to run on "the date of the last
culpable act or omission of the defendant." *Id.*, at ___.

From the structure of §13, and the language of its second sentence,
it is evident that the 3-year bar is a statute of repose. The instruc-
tion that "[i]n no event" shall an action be brought more than three
years after the relevant securities offering admits of no exception.
The statute also runs from the defendant's last culpable act (the se-
curities offering), not from the accrual of the claim (the plaintiff's dis-
covery of the defect).

This view is confirmed by §13's two-sentence structure. The pair-
ing of a shorter statute of limitations and a longer statute of repose is
a common feature of statutory time limits. See, *e.g., Gabelli* v. *SEC*,
568 U. S. 442, 453. Section 13's history also supports the classifica-
tion. The 1933 Securities Act's original 2-year discovery period and
10-year outside limit were shortened a year later. The evident design
of the shortened period was to protect defendants' financial security
by reducing the open period for potential liability. Pp. 4–7.

(2) The determination that the 3-year period is a statute of re-
pose is critical here, for the question whether a tolling rule applies to

a given statutory time bar is one "of statutory intent." *Lozano* v. *Montoya Alvarez*, 572 U. S. 1, ___. In light of the purpose of a statute of repose, the provision is in general not subject to tolling. Tolling is permissible only where there is a particular indication that the legislature did not intend the statute to provide complete repose but instead anticipated the extension of the statutory period under certain circumstances. A statute of repose implements a "'legislative decisio[n] that . . . there should be a specific time beyond which a defendant should no longer be subjected to protracted liability.'" *CTS*, 573 U. S*.,* at ___. The unqualified nature of that determination supersedes the courts' residual authority and forecloses the extension of the statutory period based on equitable principles. Thus, the Court repeatedly has stated that statutes of repose are not subject to equitable tolling. See, *e.g., id.,* at ___–___. Pp. 7–8.

(3) The tolling decision in *American Pipe* derived from equity principles and therefore cannot alter the unconditional language and purpose of the 3-year statute of repose. The source of the tolling rule applied in *American Pipe* is the judicial power to promote equity, not the power to interpret and enforce statutory provisions. Nothing in the decision suggests that its tolling rule was mandated by a statute or federal rule. Moreover, the Court relied on cases that are paradigm applications of equitable tolling principles, see 414 U. S., at 559. Thus, the Court has previously referred to *American Pipe* as "equitable tolling." See, *e.g., Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 96, and n. 3. Pp. 8–11.

(4) Petitioner's counterarguments are unpersuasive. First, petitioner contends that this case is indistinguishable from *American Pipe*, but the statute there was one of limitations, which may be tolled by equitable considerations even where a statute of repose may not. Second, petitioner argues that the timely filing of a class-action complaint fulfills the purposes of a statutory time limit with regard to later filed suits by individual members of the class. But by permitting a class action to splinter into individual suits, the application of *American Pipe* tolling here would threaten to alter and expand a defendant's accountability, contradicting the substance of a statute of repose. Third, petitioner contends that dismissal of its individual suit as untimely would eviscerate its ability to opt out, but it does not follow from any privilege to opt out that an ensuing suit can be filed without regard to mandatory time limits. Fourth, petitioner argues that declining to apply *American Pipe* tolling to statutes of repose will create inefficiencies, but this Court "lack[s] the authority to rewrite" the statute of repose or to ignore its plain import. *Baker Botts L. L. P.* v. *ASARCO LLC*, 576 U. S. ___, ___. And petitioner's practical concerns likely are overstated. Pp. 11–14.

4      CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT
SYSTEM *v.* ANZ SECURITIES, INC.

Syllabus

(b) Also unpersuasive is petitioner's alternative argument: that §13's requirement that an "action" be "brought" within three years of the relevant securities offering is met here because the filing of the class-action complaint "brought" petitioner's individual "action" within the statutory time period. This argument presumes that an "action" is "brought" when substantive claims are presented to any court, rather than when a particular complaint is filed in a particular court. The term "action," however, refers to a judicial "proceeding," or perhaps a "suit"—not to the general content of claims. Taken to its logical limit, petitioner's argument would make an individual action timely even if it were filed decades after the original securities offering—provided a class-action complaint had been filed within the initial 3-year period. Congress would not have intended this result. This argument is also inconsistent with the reasoning in *American Pipe* itself. If the filing of a class action made all subsequent actions by putative class members timely, there would be no need for tolling at all. Pp. 14–15.

(c) The final analysis is straightforward. Because §13's 3-year time bar is a statute of repose, it displaces the traditional power of courts to modify statutory time limits in the name of equity. And because the *American Pipe* tolling rule is rooted in those equitable powers, it cannot extend the 3-year period. Petitioner's untimely filing of its individual action is thus ground for dismissal. Pp. 16–17.

655 Fed. Appx. 13, affirmed.

KENNEDY, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, ALITO, and GORSUCH, JJ., joined. GINSBURG, J., filed a dissenting opinion, in which BREYER, SOTOMAYOR, and KAGAN, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–373

_____

## CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, PETITIONER *v.* ANZ SECURITIES, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[June 26, 2017]

JUSTICE KENNEDY delivered the opinion of the Court.

The suit giving rise to the case before the Court was filed by a plaintiff who was a member of a putative class in a class action but who later elected to withdraw and proceed in this separate suit, seeking recovery for the same illegalities that were alleged in the class suit. The class-action suit had been filed within the time permitted by statute. Whether the later, separate suit was also timely is the controlling question.

## I

### A

The Securities Act of 1933 "protects investors by ensuring that companies issuing securities . . . make a 'full and fair disclosure of information' relevant to a public offering." *Omnicare, Inc.* v. *Laborers Dist. Council Constr. Industry Pension Fund*, 575 U. S. ___, ___ (2015) (slip op., at 1) (quoting *Pinter* v. *Dahl*, 486 U. S. 622, 646 (1988)); see 48 Stat. 74, as amended, 15 U. S. C. §77a *et seq.* Companies may offer securities to the public only after filing a registration statement, which must contain information

about the company and the security for sale. *Omnicare*, 575 U. S., at ___–___ (slip op., at 1–2). Section 11 of the Securities Act "promotes compliance with these disclosure provisions by giving purchasers a right of action against an issuer or designated individuals," including securities underwriters, for any material misstatements or omissions in a registration statement. *Id.,* at ___ (slip op., at 2); see 15 U. S. C. §77k(a).

The Act provides time limits for §11 suits. These time limits are set forth in a two-sentence section of the Act, §13. It provides as follows:

> "No action shall be maintained to enforce any liability created under [§11] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . . In no event shall any such action be brought to enforce a liability created under [§11] more than three years after the security was bona fide offered to the public . . . ." 15 U. S. C. §77m.

So there are two time bars in the quoted provision; and the second one, the 3-year bar, is central to this case.

B

Lehman Brothers Holdings Inc. formerly was one of the largest investment banks in the United States. In 2007 and 2008, Lehman raised capital through a number of public securities offerings. Petitioner, California Public Employees' Retirement System (sometimes called CalPERS), is the largest public pension fund in the country. Petitioner purchased securities in some of these Lehman offerings; and it is alleged that respondents, various financial firms, are liable under the Act for their participation as underwriters in the transactions. The separate respondents are listed in an appendix to this

opinion.

In September 2008, Lehman filed for bankruptcy. Around the same time, a putative class action concerning Lehman securities was filed against respondents in the United States District Court for the Southern District of New York. The operative complaint raised claims under §11, alleging that the registration statements for certain of Lehman's 2007 and 2008 securities offerings included material misstatements or omissions. The complaint was filed on behalf of all persons who purchased the identified securities, making petitioner a member of the putative class. Petitioner, however, was not one of the named plaintiffs in the suit. The class action was consolidated with other securities suits against Lehman in a single multidistrict litigation.

In February 2011, petitioner filed a separate complaint against respondents in the United States District Court for the Northern District of California. This suit was filed more than three years after the relevant transactions occurred. The complaint alleged identical securities law violations as the class-action complaint, but the claims were on petitioner's own behalf. The suit was transferred and consolidated with the multidistrict litigation in the Southern District of New York. Soon thereafter, a proposed settlement was reached in the putative class action. Petitioner, apparently convinced it could obtain a more favorable recovery in its separate suit, opted out of the class.

Respondents then moved to dismiss petitioner's individual suit alleging §11 violations as untimely under the 3-year bar in the second sentence of §13. Petitioner countered that its individual suit was timely because that 3-year period was tolled during the pendency of the class-action filing. The principal authority cited to support petitioner's argument that the 3-year period was tolled was *American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538

(1974).

The District Court disagreed with petitioner's argument, holding that the 3-year bar in §13 is not subject to tolling. The Court of Appeals for the Second Circuit affirmed. In agreement with the District Court, the Court of Appeals held that the tolling principle discussed in *American Pipe* is inapplicable to the 3-year time bar. *In re Lehman Brothers Securities and ERISA Litigation*, 655 Fed. Appx. 13, 15 (2016). As the Court of Appeals noted, there is disagreement about whether the tolling rule of *American Pipe* applies to the 3-year time bar in §13. Compare *Joseph* v. *Wiles*, 223 F. 3d 1155, 1166–1168 (CA10 2000), with *Stein* v. *Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F. 3d 780, 792–795 (CA6 2016), and *Dusek* v. *JPMorgan Chase & Co.*, 832 F. 3d 1243, 1246–1249 (CA11 2016).

The Court of Appeals also rejected petitioner's alternative argument that its individual claims were "essentially 'filed' in the putative class complaint," so that the filing of the class action within three years made the individual claims timely. 655 Fed. Appx., at 15.

This Court granted certiorari. 580 U. S. ___ (2017).

## II

The question then is whether §13 permits the filing of an individual complaint more than three years after the relevant securities offering, when a class-action complaint was timely filed, and the plaintiff filing the individual complaint would have been a member of the class but for opting out of it. The answer turns on the nature and purpose of the 3-year bar and of the tolling rule that petitioner seeks to invoke. Each will be addressed in turn.

## A

As the Court explained in *CTS Corp.* v. *Waldburger*, 573 U. S. ___ (2014), statutory time bars can be divided into

two categories: statutes of limitations and statutes of repose. Both "are mechanisms used to limit the temporal extent or duration of liability for tortious acts," but "each has a distinct purpose." *Id.,* at \_\_\_–\_\_\_ (slip op., at 5–6).

Statutes of limitations are designed to encourage plaintiffs "to pursue diligent prosecution of known claims." *Id.,* at \_\_\_ (slip op., at 6) (internal quotation marks omitted). In accord with that objective, limitations periods begin to run "when the cause of action accrues"—that is, "when the plaintiff can file suit and obtain relief." *Id.,* at \_\_\_ (slip op., at 5) (internal quotation marks omitted). In a personal-injury or property-damage action, for example, more often than not this will be "'when the injury occurred or was discovered.'" *Ibid.*

In contrast, statutes of repose are enacted to give more explicit and certain protection to defendants. These statutes "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Id.,* at \_\_\_–\_\_\_ (slip op., at 6–7) (internal quotation marks omitted). For this reason, statutes of repose begin to run on "the date of the last culpable act or omission of the defendant." *Id.,* at \_\_\_ (slip op., at 6).

The 3-year time bar in §13 reflects the legislative objective to give a defendant a complete defense to any suit after a certain period. From the structure of §13, and the language of its second sentence, it is evident that the 3-year bar is a statute of repose. In fact, this Court has already described the provision as establishing "a period of repose," which "'impose[s] an outside limit'" on temporal liability. *Lampf, Pleva, Lipkind, Prupis & Petigrow* v. *Gilbertson*, 501 U. S. 350, 363 (1991).

The statute provides in clear terms that "[i]n no event" shall an action be brought more than three years after the securities offering on which it is based. 15 U. S. C. §77m. This instruction admits of no exception and on its face creates a fixed bar against future liability. See *CTS,*

*supra,* at \_\_\_–\_\_\_ (slip op., at 6–7); cf. *United States* v. *Brockamp*, 519 U. S. 347, 350 (1997) (noting that a statute that "sets forth its time limitations in unusually emphatic form . . . cannot easily be read as containing implicit exceptions"). The statute, furthermore, runs from the defendant's last culpable act (the offering of the securities), not from the accrual of the claim (the plaintiff's discovery of the defect in the registration statement). Under *CTS*, this point is close to a dispositive indication that the statute is one of repose.

This view is confirmed by the two-sentence structure of §13. In addition to the 3-year time bar, §13 contains a 1-year statute of limitations. The limitations statute runs from the time when the plaintiff discovers (or should have discovered) the securities-law violation. The pairing of a shorter statute of limitations and a longer statute of repose is a common feature of statutory time limits. See, *e.g., Gabelli* v. *SEC*, 568 U. S. 442, 453 (2013) ("[S]tatutes applying a discovery rule . . . often couple that rule with an absolute provision for repose"). The two periods work together: The discovery rule gives leeway to a plaintiff who has not yet learned of a violation, while the rule of repose protects the defendant from an interminable threat of liability. Cf. *Merck & Co.* v. *Reynolds*, 559 U. S. 633, 650 (2010) (reasoning that 2-year discovery rule would not "subject defendants to liability for acts taken long ago," because the statute also included an "unqualified bar on actions instituted '5 years after such violation'").

The history of the 3-year provision also supports its classification as a statute of repose. It is instructive to note that the statute was not enacted in its current form. The original version of the 1933 Securities Act featured a 2-year discovery period and a 10-year outside limit, see §13, 48 Stat. 84, but Congress changed this framework just one year after its enactment. The discovery period was changed to one year and the outside limit to three

years. See Securities Exchange Act of 1934, §207, 48 Stat. 908. The evident design of the shortened statutory period was to protect defendants' financial security in fast-changing markets by reducing the open period for potential liability.

## B

The determination that the 3-year period is a statute of repose is critical in this case, for the question whether a tolling rule applies to a given statutory time bar is one "of statutory intent." *Lozano* v. *Montoya Alvarez*, 572 U. S. 1, \_\_\_ (2014) (slip op., at 8). The purpose of a statute of repose is to create "an absolute bar on a defendant's temporal liability," *CTS*, 573 U. S., at \_\_\_ (slip op., at 6) (alteration and internal quotation marks omitted); and that purpose informs the assessment of whether, and when, tolling rules may apply.

In light of the purpose of a statute of repose, the provision is in general not subject to tolling. Tolling is permissible only where there is a particular indication that the legislature did not intend the statute to provide complete repose but instead anticipated the extension of the statutory period under certain circumstances.

For example, if the statute of repose itself contains an express exception, this demonstrates the requisite intent to alter the operation of the statutory period. See 1 C. Corman, Limitation of Actions §1.1, pp. 4–5 (1991) (Corman); see, *e.g.,* 29 U. S. C. §1113 (establishing a 6-year statute of repose, but stipulating that, in case of fraud, the 6-year period runs from the plaintiff's discovery of the violation). In contrast, where the legislature enacts a general tolling rule in a different part of the code—*e.g.,* a rule that suspends time limits until the plaintiff reaches the age of majority—courts must analyze the nature and relation of the legislative purpose of each provision to determine which controls. See 2 Corman §10.2.1, at 108.

8    CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT
SYSTEM *v.* ANZ SECURITIES, INC.

Opinion of the Court

In keeping with the statute-specific nature of that analysis, courts have reached different conclusions about whether general tolling statutes govern particular periods of repose. *Ibid.*, n. 15.

Of course, not all tolling rules derive from legislative enactments. Some derive from the traditional power of the courts to "'apply the principles . . . of equity jurisprudence.'" *Young* v. *United States*, 535 U. S. 43, 50 (2002) (alteration omitted). The classic example is the doctrine of equitable tolling, which permits a court to pause a statutory time limit "when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano*, 572 U. S*.,* at ___ (slip op., at 7). Tolling rules of that kind often apply to statutes of limitations based on the presumption that Congress "'legislate[s] against a background of common-law adjudicatory principles.'" *Id.,* at ___ (slip op., at 8).

The purpose and effect of a statute of repose, by contrast, is to override customary tolling rules arising from the equitable powers of courts. By establishing a fixed limit, a statute of repose implements a "'legislative decisio[n] that as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability.'" *CTS*, 573 U. S*.,* at ___ (slip op., at 7). The unqualified nature of that determination supersedes the courts' residual authority and forecloses the extension of the statutory period based on equitable principles. For this reason, the Court repeatedly has stated in broad terms that statutes of repose are not subject to equitable tolling. See, *e.g., id.,* at ___–___ (slip op., at 7–8); *Lampf, Pleva,* 501 U. S., at 363.

## C

Petitioner contends that the 3-year provision is subject to tolling based on the rationale and holding in the Court's decision in *American Pipe*. The language of the 3-year

statute does not refer to or impliedly authorize any exceptions for tolling. If *American Pipe* had itself been grounded in a legislative enactment, perhaps an argument could be made that the enactment expressed a legislative objective to modify the 3-year period. If, however, the tolling decision in *American Pipe* derived from equity principles, it cannot alter the unconditional language and purpose of the 3-year statute of repose.

In *American Pipe*, a timely class-action complaint was filed asserting violations of federal antitrust law. 414 U. S., at 540. Class certification was denied because the class was not large enough, see Fed. Rule Civ. Proc. 23(a)(1), and individuals who otherwise would have been members of the class then filed motions to intervene as individual plaintiffs. The motions were denied on the grounds that the applicable 4-year time bar had expired. See 15 U. S. C. §15b. The Court of Appeals reversed, permitting intervention.

This Court affirmed. It held the individual plaintiffs' motions to intervene were timely because "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class." *American Pipe*, 414 U. S., at 554. The Court reasoned that this result was consistent "both with the procedures of Rule 23 and with the proper function of the limitations statute" at issue. *Id.,* at 555. First, the tolling furthered "the purposes of litigative efficiency and economy" served by Rule 23. *Id.,* at 556. Without the tolling, "[p]otential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable," which would "breed needless duplication of motions." *Id.,* at 553–554. Second, the tolling was in accord with "the functional operation of a statute of limitations." *Id.,* at 554. By filing a class complaint within the statutory period, the named plaintiff "notifie[d] the defendants not only of the substantive claims being

10    CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT
SYSTEM *v.* ANZ SECURITIES, INC.

Opinion of the Court

brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.,* at 555.

As this discussion indicates, the source of the tolling rule applied in *American Pipe* is the judicial power to promote equity, rather than to interpret and enforce statutory provisions. Nothing in the *American Pipe* opinion suggests that the tolling rule it created was mandated by the text of a statute or federal rule. Nor could it have. The central text at issue in *American Pipe* was Rule 23, and Rule 23 does not so much as mention the extension or suspension of statutory time bars.

The Court's holding was instead grounded in the traditional equitable powers of the judiciary. The Court described its rule as authorized by the "judicial power to toll statutes of limitations." *Id.*, at 558; see also *id.,* at 555 ("the tolling rule *we establish here*" (emphasis added)). The Court also relied on cases that are paradigm applications of equitable tolling principles, explaining with approval that tolling in one such case was based on "considerations 'deeply rooted in our jurisprudence.'" *Id.*, at 559 (quoting *Glus* v. *Brooklyn Eastern Dist. Terminal*, 359 U. S. 231, 232 (1959); alteration omitted); see also 414 U. S*.,* at 559 (citing *Holmberg* v. *Armbrecht*, 327 U. S. 392 (1946)). The Court noted too that "bad faith" was not the cause of the District Court's denial of class certification. 414 U. S*.,* at 553 (internal quotation marks omitted).

Perhaps for these reasons, this Court has referred to *American Pipe* as "equitable tolling." See *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 96, and n. 3 (1990); see also *Young, supra,* at 49; *Greyhound Corp.* v. *Mt. Hood Stages, Inc.*, 437 U. S. 322, 338, n. (1978) (Burger, C. J., concurring) (using *American Pipe* as an example of "[t]he authority of a federal court, sitting as a chancellor, to toll a statute of limitations on equitable grounds"). It is true, however, that the *American Pipe* Court did not

consider the criteria of the formal doctrine of equitable tolling in any direct manner. It did not analyze, for example, whether the plaintiffs pursued their rights with special care; whether some extraordinary circumstance prevented them from intervening earlier; or whether the defendant engaged in misconduct. See *Holland* v. *Florida*, 560 U. S. 631, 649 (2010) (identifying these considerations); *Young*, 535 U. S., at 50 (same). The balance of the Court's reasoning nonetheless reveals a rule based on traditional equitable powers, designed to modify a statutory time bar where its rigid application would create injustice.

### D

This analysis shows that the *American Pipe* tolling rule does not apply to the 3-year bar mandated in §13. As explained above, the 3-year limit is a statute of repose. See *supra,* at 5–7. And the object of a statute of repose, to grant complete peace to defendants, supersedes the application of a tolling rule based in equity. See *supra,* at 7–8. No feature of §13 provides that deviation from its time limit is permissible in a case such as this one. To the contrary, the text, purpose, structure, and history of the statute all disclose the congressional purpose to offer defendants full and final security after three years.

Petitioner raises four counterarguments, but they are not persuasive. First, petitioner contends that this case is indistinguishable from *American Pipe* itself. If the 3-year bar here cannot be tolled, petitioner reasons, then there was no justification for the *American Pipe* Court's contrary decision to suspend the time bar in that case. *American Pipe*, however, is distinguishable. The statute in *American Pipe* was one of limitations, not of repose; it began to run when "'the cause of action accrued.'" 414 U. S., at 541, n. 2 (quoting 15 U. S. C. §15b). The statute in the instant case, however, is a statute of repose. Consistent

12 CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT
SYSTEM *v.* ANZ SECURITIES, INC.

Opinion of the Court

with the different purposes embodied in statutes of limitations and statutes of repose, it is reasonable that the former may be tolled by equitable considerations even though the latter in most circumstances may not. See *supra,* at 7–8.

Second, petitioner argues that the filing of a class-action complaint within three years fulfills the purposes of a statutory time limit with regard to later filed suits by individual members of the class. That is because, according to petitioner, the class complaint puts a defendant on notice as to the content of the claims against it and the set of potential plaintiffs who might assert those claims. It is true that the *American Pipe* Court, in permitting tolling, suggested that generic notice satisfied the purposes of the statute of limitations in that case. See 414 U. S., at 554–555. While this was deemed sufficient in balancing the equities to allow tolling under the antitrust statute, it must be noted that here the analysis differs because the purpose of a statute of repose is to give the defendant full protection after a certain time.

If the number and identity of individual suits, where they may be filed, and the litigation strategies they will use are unknown, a defendant cannot calculate its potential liability or set its own plans for litigation with much precision. The initiation of separate individual suits may thus increase a defendant's practical burdens. See, *e.g.,* Cottreau, Note, The Due Process Right To Opt Out of Class Actions, 73 N. Y. U. L. Rev. 480, 486, and n. 29 (1998) ("A defendant's transaction costs are likely to be reduced by having to defend just one action"). The emergence of individual suits, furthermore, may increase a defendant's financial liability; for plaintiffs who opt out have considerable leverage and, as a result, may obtain outsized recoveries. See, *e.g.,* Coffee, Accountability and Competition in Securities Class Actions: Why "Exit" Works Better Than "Voice," 30 Cardozo L. Rev. 407, 417,

432–433 (2008); Perino, Class Action Chaos? The Theory of the Core and an Analysis of Opt-Out Rights in Mass Tort Class Actions, 46 Emory L. J. 85, 97 (1997). These uncertainties can put defendants at added risk in conducting business going forward, causing destabilization in markets which react with sensitivity to these matters. By permitting a class action to splinter into individual suits, the application of *American Pipe* tolling would threaten to alter and expand a defendant's accountability, contradicting the substance of a statute of repose. All this is not to suggest how best to further equity under these circumstances but simply to support the recognition that a statute of repose supersedes a court's equitable balancing powers by setting a fixed time period for claims to end.

Third, petitioner contends that dismissal of its individual suit as untimely would eviscerate its ability to opt out, an ability this Court has indicated should not be disregarded. See *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U. S. 338, 363 (2011). It does not follow, however, from any privilege to opt out that an ensuing suit can be filed without regard to mandatory time limits set by statute.

Fourth, petitioner argues that declining to apply *American Pipe* tolling to statutes of repose will create inefficiencies. It contends that nonnamed class members will inundate district courts with protective filings. Even if petitioner were correct, of course, this Court "lack[s] the authority to rewrite" the statute of repose or to ignore its plain import. *Baker Botts L. L. P.* v. *ASARCO LLC*, 576 U. S. \_\_\_, \_\_\_ (2015) (slip op., at 12).

And petitioner's concerns likely are overstated. Petitioner has not offered evidence of any recent influx of protective filings in the Second Circuit, where the rule affirmed here has been the law since 2013. This is not surprising. The very premise of class actions is that "'small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her

rights.'" *Amchem Products, Inc.* v. *Windsor*, 521 U. S. 591, 617 (1997). Many individual class members may have no interest in protecting their right to litigate on an individual basis. Even assuming that they do, the process is unlikely to be as onerous as petitioner claims. A simple motion to intervene or request to be included as a named plaintiff in the class-action complaint may well suffice. See, *e.g.*, Brief for Washington Legal Foundation as *Amicus Curiae* 6–11 (describing procedures); Brief for Securities Industry and Financial Markets Association et al. as *Amici Curiae* 16, 19–20 (same). District courts, furthermore, have ample means and methods to administer their dockets and to ensure that any additional filings proceed in an orderly fashion. Cf. *Dietz* v. *Bouldin*, 579 U. S. ___, ___ (2016) (slip op., at 6) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases").

## III

Petitioner makes an alternative argument that does not depend on tolling. Petitioner submits its individual suit was timely in any event. Section 13 provides that an "action" must be "brought" within three years of the relevant securities offering. See 15 U. S. C. §77m. Petitioner argues that requirement is met here because the filing of the class-action complaint "brought" petitioner's individual "action" within the statutory time period.

This argument rests on the premise that an "action" is "brought" when substantive claims are presented to any court, rather than when a particular complaint is filed in a particular court. The term "action," however, refers to a judicial "proceeding," or perhaps to a "suit"—not to the general content of claims. See Black's Law Dictionary 41 (3d ed. 1933) (defining "action" as, *inter alia*, "an ordinary proceeding in a court of justice"); see also *id.,* at 43 ("The

terms 'action' and 'suit' are . . . nearly, if not entirely, synonymous"). Whether or not petitioner's individual complaint alleged the same securities law violations as the class-action complaint, it defies ordinary understanding to suggest that its filing—in a separate forum, on a separate date, by a separate named party—was the same "action," "proceeding," or "suit."

The limitless nature of petitioner's argument, furthermore, reveals its implausibility. It appears that, in petitioner's view, the bringing of the class action would make any subsequent action raising the same claims timely. Taken to its logical limit, an individual action would be timely even if it were filed decades after the original securities offering—provided a class-action complaint had been filed at some point within the initial 3-year period. Congress would not have intended this result.

Petitioner's argument also fails because it is inconsistent with the reasoning in *American Pipe* itself. If the filing of a class action made all subsequent actions by putative class members timely, there would be no need for tolling at all. Yet this Court has described *American Pipe* as creating a tolling rule, necessary to permit the ensuing individual actions to proceed. See, *e.g., American Pipe*, 414 U. S., at 555; *Irwin*, 498 U. S., at 96, n. 3; *Crown, Cork & Seal Co.* v. *Parker*, 462 U. S. 345, 350 (1983). Indeed, the *American Pipe* Court reasoned that the class-action complaint "was filed with 11 days yet to run" in the statutory period, so the motions for intervention were timely only if filed within 11 days after the denial of class certification. 414 U. S., at 561. If the filing of the class action "brought" any included individual actions, it would have sufficed for the Court to note the date on which the class action was filed and deem all subsequent individual actions proper, regardless when filed.

16      CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT
SYSTEM *v.* ANZ SECURITIES, INC.

Opinion of the Court

\*      \*      \*

Tolling may be of great value to allow injured persons to recover for injuries that, through no fault of their own, they did not discover because the injury or the perpetrator was not evident until the limitations period otherwise would have expired. This is of obvious utility in the securities market, where complex transactions and events can be obscure and difficult for a market participant to analyze or apprehend. In a similar way, tolling as allowed in *American Pipe* may protect plaintiffs who anticipated their interests would be protected by a class action but later learned that a class suit could not be maintained for reasons outside their control.

The purpose of a statute of repose, on the other hand, is to allow more certainty and reliability. These ends, too, are a necessity in a marketplace where stability and reliance are essential components of valuation and expectation for financial actors. The statute in this case reconciles these different ends by its two-tier structure: a conventional statute of limitations in the first clause and a statute of repose in the second.

The statute of repose transforms the analysis. In a hypothetical case with a different statutory scheme, consisting of a single limitations period without an additional outer limit, a court's equitable power under *American Pipe* in many cases would authorize the relief petitioner seeks. Here, however, the Court need not consider how equitable considerations should be formulated or balanced, for the mandate of the statute of repose takes the case outside the bounds of the *American Pipe* rule.

The final analysis, then, is straightforward. The 3-year time bar in §13 of the Securities Act is a statute of repose. Its purpose and design are to protect defendants against future liability. The statute displaces the traditional power of courts to modify statutory time limits in the name of equity. Because the *American Pipe* tolling rule is

rooted in those equitable powers, it cannot extend the 3-year period. Petitioner's untimely filing of its individual action is ground for dismissal.

The judgment of the Court of Appeals for the Second Circuit is affirmed.

*It is so ordered.*

## APPENDIX

Respondents are the following financial securities firms: ANZ Securities, Inc.; Bankia, S. A.; BBVA Securities Inc.; BMO Capital Markets Corp.; BNP Paribas FS, LLC; BNP Paribas S. A.; BNY Mellon Capital Markets, LLC; CIBC World Markets Corp.; Citigroup Global Markets Inc.; Daiwa Capital Markets Europe Limited; DZ Financial Markets LLC; HSBC Securities (USA) Inc.; HVB Capital Markets, Inc.; ING Financial Markets LLC; Mizuho Securities USA Inc.; M. R. Beal & Company; Muriel Siebert & Co. Inc.; nabSecurities LLC; Natixis Securities Americas LLC; RBC Capital Markets LLC; RBS Securities, Inc.; RBS WCS Holding Company; Santander Investment Securities Inc.; Scotia Capital (USA) Inc.; SG Americas Securities, LLC; Sovereign Securities Corporation LLC; SunTrust Capital Markets, Inc.; Utendahi Capital Partners, L. P.; and Wells Fargo Securities, LLC.

# SUPREME COURT OF THE UNITED STATES

---

No. 16–373

---

## CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, PETITIONER *v.* ANZ SECURITIES, INC., ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[June 26, 2017]

JUSTICE GINSBURG, with whom JUSTICE BREYER, JUSTICE SOTOMAYOR, and JUSTICE KAGAN join, dissenting.

A class complaint was filed against respondents well within the three-year period of repose set out in §13 of the Securities Act of 1933, 15 U. S. C. §77m. That complaint informed respondents of the substance of the claims asserted against them and the identities of potential claimants. See *American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538, 554–555 (1974); *Crown, Cork & Seal Co.* v. *Parker*, 462 U. S. 345, 353 (1983). Respondents, in other words, received what §13's repose period was designed to afford them: notice of their potential liability within a fixed time window.

The complaint also "commence[d] the action for all members of the class." *American Pipe*, 414 U. S., at 550. Thus, when petitioner California Public Employees' Retirement System (CalPERS) elected to exercise the right safeguarded by Federal Rule of Civil Procedure 23(c)(2)(B)(v), *i.e.*, the right to opt out of the class and proceed independently, CalPERS' claim remained timely. See *American Pipe*, 414 U. S., at 550 (demanding that class members "individually meet the timeliness requirements . . . is simply inconsistent with Rule 23"). Given the due process underpinning of the opt-out right, see *Wal-*

*Mart Stores, Inc.* v. *Dukes*, 564 U. S. 338, 363 (2011), I resist rendering the right illusory for CalPERS and similarly situated class members. I would therefore reverse the judgment of the Second Circuit. Accordingly, I dissent from today's decision, under which opting out cuts off any chance for recovery.

I

CalPERS' claim against respondents was timely launched when the class representative filed a complaint pursuant to §11 of the Securities Act, 15 U. S. C. §77k, on behalf of all members of the described class, CalPERS among them. See *American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538, 550 (1974) (under Federal Rule of Civil Procedure 23, "the filing of a timely class action complaint commences the action for all members of the class"). See also *ante*, at 3 (CalPERS was part of putative class). Filing the class complaint within three years of the date the securities specified in that complaint were offered to the public also satisfied §13's statute of repose. As the Court observes, *ante*, at 5, statutes of repose "effect a legislative judgment that a defendant should be free from [facing] liability after the legislatively determined period of time." *CTS Corp.* v. *Waldburger*, 573 U. S. ___, ___–___ (2014) (slip op., at 6–7) (internal quotation marks omitted). A repose period assures a party who might be drawn into litigation that, if no action is brought within a specified time, he will be off the hook. But whether CalPERS stayed in the class or eventually filed separately, respondents would have known, within the repose period, of their potential liability to all putative class members.

A class complaint "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Crown, Cork & Seal Co.* v. *Parker*, 462 U. S. 345, 353 (1983) (quot-

ing *American Pipe*, 414 U. S., at 555). The class complaint filed against respondents provided that very notice: It identified "the essential information necessary to determine both the subject matter and size of the prospective litigation," *id.*, at 555—*i.e.*, the class of plaintiffs, the offering documents, and the alleged untrue statements and misleading omissions in those documents, see App. 50–66. "[A] defendant faced with [such] information about a potential liability to a class cannot be said to have reached a state of repose that should be protected." Developments in the Law: Class Actions, 89 Harv. L. Rev. 1318, 1451 (1976).

When CalPERS elected to pursue individually the claims already stated in the class complaint against the same defendants, it simply took control of the piece of the action that had always belonged to it. CalPERS' statement of the same allegations in an individual complaint could not disturb anyone's repose, for respondents could hardly be at rest once notified of the potential claimants and the precise false or misleading statements alleged to infect the registration statements at issue.[1] CalPERS' decision to opt out did change two things: (1) CalPERS positioned itself to exercise its constitutional right to go it alone, cutting loose from a monetary settlement it deemed insufficient; and (2) respondents had to deal with CalPERS and its attorneys in addition to the named plaintiff and class counsel. Although those changes may affect how litigation subsequently plays out, see *ante*, at 12–13, they do not implicate the concerns that prompted §13's repose period: The class complaint disclosed the same information respondents would have received had each

---

[1] To rank as a continuation of an action timely brought and serving the purpose of repose, the individual complaint may raise only those claims stated in the class complaint and must be launched while the class suit is still pending.

class member instead filed an individual complaint on the
day the class complaint was filed.

## II

Today's decision disserves the investing public that §11
was designed to protect.  The harshest consequences will
fall on those class members, often least sophisticated, who
fail to file a protective claim within the repose period.
Absent a protective claim filed within that period, those
members stand to forfeit their constitutionally shielded
right to opt out of the class and thereby control the prose-
cution of their own claims for damages.  See *Wal-Mart
Stores, Inc.* v. *Dukes*, 564 U. S. 338, 363 (2011) ("In the
context of a class action predominantly for money dam-
ages," the "absence of . . . opt-out violates due process.").
Because critical stages of securities class actions, includ-
ing the class-certification decision, often occur years after
the filing of a class complaint,[2] the risk is high that class
members failing to file a protective claim will be sad-
dled with inadequate representation or an inadequate
judgment.

The majority's ruling will also gum up the works of class
litigation.  Defendants will have an incentive to slow walk
discovery and other precertification proceedings so the
clock will run on potential opt outs.  Any class member
with a material stake in a §11 case, including every fiduci-
ary who must safeguard investor assets, will have strong
cause to file a protective claim, in a separate complaint or

--------

[2] A recent study showed, for example, that the time from the filing of
a securities class complaint to the class-certification decision exceeds
two years in 66% of cases and exceeds three years in 36% of cases.  See
S. Boettrich & S. Starykh, NERA Economic Consulting, Recent Trends
in Securities Class Action Litigation: 2016 Full-Year Review, p. 23
(2017), available at http://www.nera.com/content/dam/nera/publications/
2017/PUB_2016_Securities_Year-End_Trends_Report_0117.pdf (as last
visited June 19, 2017).

in a motion to intervene, before the three-year period expires. See Brief for Retired Federal Judges as *Amici Curiae* 9–14. Such filings, by increasing the costs and complexity of the litigation, "substantially burden the courts." *Id.*, at 13.

Today's decision impels courts and class counsel to take on a more active role in protecting class members' opt-out rights. See *id.*, at 11–13. As the repose period nears expiration, it should be incumbent on class counsel, guided by district courts, to notify class members about the consequences of failing to file a timely protective claim. "At minimum, when notice goes out to a class beyond [§13's limitations period], a district court will need to assess whether the notice [should] alert class members that opting out . . . would end [their] chance for recovery." *Id.*, at 20.

\*    \*    \*

For the reasons stated, I would hold that the filing of the class complaint commenced CalPERS' action under §11 of the Securities Act, thereby satisfying §13's statute of repose. Accordingly, I would reverse the judgment of the Second Circuit.