# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 23-2625

———————————————

Todd DeGeer

*Plaintiff - Appellant*

v.

Union Pacific Railroad Co.

*Defendant - Appellee*

------------------------------

Public Justice

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 7, 2024
Filed: September 3, 2024

_____

Before SMITH, KELLY, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

A group of Union Pacific Railroad Company employees brought a class action against the company alleging that its fitness-for-duty program violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a), (b)(6). Todd DeGeer thought he was a member of that class. When we decertified it, he filed an Equal Employment Opportunity Commission (EEOC) charge and an individual suit, believing that *American Pipe & Construction Co. v. Utah* tolled his claims. 414 U.S. 538 (1974). The district court disagreed and found that DeGeer was not a member of the class as narrowly defined in the certification order, so it dismissed his individual claims as untimely. But because the revised definition did not unambiguously exclude DeGeer, we reverse and remand.

I.

Union Pacific has a fitness-for-duty program to make sure that employees can "[s]afely perform a job, with or without reasonable accommodations," and "[m]eet medical standards established by regulatory agencies in accordance with federal and state laws." The Federal Railroad Agency mandates regular testing to assess whether employees in safety-sensitive positions can "recognize and distinguish between the colors of railroad signals" by using one of an approved list of tests. 49 C.F.R. § 242.117(h)(3). If an employee fails that test, he may be sent for "further medical evaluation by a railroad's medical examiner to determine" if he can still safely perform, including a "retest." § 242.117(j). Union Pacific used the Ishihara test, and if a worker failed it, he could take a color vision field test. But after a deadly railroad crash, Union Pacific updated its fitness-for-duty program. It created a new secondary test, which allegedly doesn't model real-world conditions or pass minimum validation standards.

Despite his longstanding color vision deficiency, DeGeer worked at Union Pacific for years without incident—most recently as a conductor, a safety-sensitive position. When he had taken the signal tests in the past, he typically failed the Ishihara test and passed a secondary test. But after Union Pacific replaced the secondary test, DeGeer failed both. Though he insists that he can still do the job of

a conductor, Union Pacific removed him from service in June 2017, imposed permanent work restrictions, and barred him from working in any job where he would have to identify traffic signals.

Over a year before that happened, former Union Pacific employees filed a class action alleging that the company's fitness-for-duty policies and practices violated the ADA. *See Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 620–21 (D. Neb. 2019). DeGeer wasn't a named plaintiff, but he was aware of the suit and was one of 44 employees to submit a declaration with the plaintiffs' certification motion. Although the class definition changed over time, DeGeer always thought that he was a member.

The operative complaint defined the class as Union Pacific employees who "were removed from service over their objection, and/or suffered another adverse employment action . . . for reasons related to a Fitness-for-Duty evaluation." There is no question that DeGeer was a member of the class under this definition. But Union Pacific thought it was too broad. So in response to discovery requests, it provided a list of employees who were subject to a fitness-for-duty evaluation "related to a Reportable Health Event." Union Pacific's medical rules define a reportable health event as "any new diagnosis, recent events, and/or change" in a list of conditions including "significant vision or hearing changes." DeGeer was on the list.

When plaintiffs moved to certify the class, though, the definition changed again. Rather than employees subject to a fitness-for-duty evaluation "related to" a reportable health event, the proposed class included "[a]ll individuals who ha[d] been or w[ould] be subject to a fitness-for-duty examination *as a result of* a reportable health event at any time from September 18, 2014 until the final resolution of [*Harris*]." *Id.* at 628 (emphasis added). The *Harris* district court certified the class under this narrowed definition. *Id.* at 627–28.

After we reversed certification, *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030 (8th Cir. 2020), DeGeer filed an EEOC charge. He then filed suit, alleging violations of the ADA and seeking a declaration that he was a member of the *Harris* class. If DeGeer's claims were tolled during the pendency of the *Harris* class, his suit was timely. But in its motion for judgment on the pleadings, Fed. R. Civ. P. 12(c), Union Pacific argued that DeGeer was not a member of the class as certified and so was not entitled to *American Pipe* tolling. The court agreed, focusing on language in DeGeer's declaration that "Union Pacific required [him] to undergo a fitness for duty evaluation *as part of [his] routine FRA recertification*"—that is, not "as a result of" a reportable health event. So while DeGeer was waiting to see how the *Harris* appeal would play out, the clock was ticking. By the time he filed his EEOC charge, he had blown past the 300-day deadline. *See* 42 U.S.C. § 2000e–5(e)(1). The court dismissed his claims as time-barred, and this appeal follows.

## II.

"[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Am. Pipe*, 414 U.S. at 554. "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 354 (1983). So long as asserted class members maintain their status, they enjoy the benefit of *American Pipe* tolling when they file an otherwise untimely individual suit. *Id.* at 350.

The *American Pipe* tolling rule is "grounded in the traditional equitable powers of the judiciary." *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 509 (2017). It furthers the efficiency purpose of class actions by disincentivizing plaintiffs wary of an adverse certification decision from filing needless protective suits. *See Am. Pipe*, 414 U.S. at 550, 556 (observing that federal class actions are designed to promote "litigative efficiency and economy" and "avoid, rather than encourage, unnecessary filing of repetitious papers and motions"). And it serves the

reliance interests that statutes of limitations aim to protect. *See Crown, Cork*, 462 U.S. at 352–53. By filing a class action, named plaintiffs put defendants on notice of "the substantive claims being brought against them" and "the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.* at 353 (quoting *Am. Pipe*, 414 U.S. at 555). And by relying on the class to press their claims, asserted class members "cannot be accused of sleeping on their rights." *Id.* at 352.

No one disputes that that tolling ended for the entire *Harris* class when we reversed certification. The only question is whether it ended for DeGeer sooner— when the district court certified the class under a narrower definition than pleaded, arguably kicking him out of the class. We have rarely considered the contours of *American Pipe* tolling, and we have never addressed this issue. But other courts have.

Following the decertification of the *Harris* class, the Ninth Circuit held that "[w]here the scope of the class definition in an initial complaint 'arguably' includes" the plaintiff, he "remain[s] entitled to *American Pipe* tolling unless and until a court accepts a new definition that unambiguously excludes them." *DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1099 (9th Cir. 2024). Any ambiguities are resolved in favor of applying *American Pipe* tolling. *Id.* at 1100. Applying this test, the court found that the narrowed definition did not unambiguously exclude its color vision appellant. *Id.* at 1106–07. "[E]xtratextual evidence" that the parties and the *Harris* district court treated him as a putative class member reinforced that finding. *Id.* at 1108–09.

The Fifth Circuit came out much the same way. Unlike *DeFries*, it found that for tolling purposes, the *Harris* district court certified an "expansive" class that included the color vision appellant. *Zaragoza v. Union Pac. R.R. Co.*, — F.4th —, 2024 WL 3755612, at *5 (5th Cir. Aug. 12, 2024). It based its finding on the district court's treatment of the list Union Pacific provided and the 44 declarants. *Id.* But it also agreed with *DeFries* that only an unambiguous exclusion from the class could

end *American Pipe* tolling. And "even considering the matter afresh," it found that the narrowed definition did not unambiguously exclude the appellant. *Id.* at \*6.

To be sure, a district court may limit an asserted class by certifying it under a definition that is unambiguously narrower than originally pleaded. *See Smith v. Pennington*, 352 F.3d 884, 894 (4th Cir. 2003). But we will not consider a plaintiff's individual interests abandoned unless there is a class certification decision that "definitively excludes" him. *Choquette v. City of New York*, 839 F. Supp. 2d 692, 699 (S.D.N.Y. 2012). We join our sister circuits in holding that "anything short of unambiguous narrowing would undermine the balance contemplated by the Supreme Court" in *American Pipe* and is insufficient to exclude a plaintiff from a class for tolling purposes. *DeFries*, 104 F.4th at 1099; *see also Zaragoza*, 2024 WL 3755612, at \*6 (quoting *DeFries*, 104 F.4th at 1099); *Pennington*, 352 F.3d at 894.

## III.

We review the grant of judgment on the pleadings *de novo*, accepting the non-movant's factual allegations as true, granting all reasonable inference in his favor, and applying the same standards that govern a Rule 12(c) motion to dismiss. *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1109 (8th Cir. 2017). We may look beyond the complaint to determine the scope of the class. *See Pennington*, 352 F.3d at 891; *Sawtell v. E.I. du Pont de Nemours and Co.*, 22 F.3d 248, 253 (10th Cir. 1994).

"The theoretical basis on which *American Pipe* rests is the notion that class members are treated as parties to the class action." *In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007). So once a district court certifies a class—having "found that the named plaintiffs asserted claims that were 'typical of the claims or defenses of the class' and would 'fairly and adequately protect the interests of the class'"—"the claimed members of the class [stand] as parties to the suit until and unless they receive[] notice thereof" and decide to opt out. *Am. Pipe*, 414 U.S. at 550–51 (quoting Fed. R. Civ. P. 23(a)(3), (4)).

Here, the named plaintiffs asserted a class of over 7,000 Union Pacific employees. That number tracked the list Union Pacific provided in discovery, which included DeGeer. The district court called it a "class list," *Harris*, 329 F.R.D. at 627, but the railroad has steadfastly rejected this characterization. Resisting certification, it argued that the list was "significantly broader" than the narrowed class definition that the plaintiffs proposed. And it urged the court to deny certification in part because "[t]he putative class is wildly diverse in . . . the reasons for their [fitness-for-duty] evaluations."

Over Union Pacific's objections, the court certified the class, finding typicality and adequacy of representation. *Id.* at 624. It relied in part on the list of employees and "declarations from 44 *class members* who have experienced the discrimination alleged" in the complaint—one of whom was DeGeer. *Id.* at 624 & n.3 (emphasis added). It then ordered notices be sent to everyone on the "class list," though there is no evidence that they ever went out. *Id.* at 627–28. DeGeer was a claimed member of the broad class that the court certified, so he stood as a party to the suit. *Am. Pipe*, 414 U.S. at 551.

Our inquiry might end there. The district court considered DeGeer a member of the class it certified, so tolling applies. *See Zaragoza*, 2024 WL 3755612, at *7. But Union Pacific argues that the current dispute over class membership requires us to parse its policies and decide for ourselves whether DeGeer was in the class. Because we cannot divorce the issue of membership from the efficiency and reliance purposes of *American Pipe* tolling, we reach the same result: DeGeer's individual claims were tolled until we decertified the *Harris* class.

Whether the narrowed definition excluded DeGeer turns on the kinds of subtle distinctions in language that are fodder for lawyers and quicksand for laymen. The parties spar, for example, over whether there was any material narrowing between the definition that governed the list of 7,000-plus employees—"related to" a reportable health event"—and the certified definition—"result of" a reportable health event." Union Pacific conceded to the *Harris* district court that the line was

not exactly clear and separating out employees with a reportable health event that affected but did not trigger their fitness-for-duty evaluations was a difficult task.

But the real fight is in whether a failed agency-mandated test could also be a reportable health event triggering a fitness-for-duty evaluation. Union Pacific argues that DeGeer admitted in his declaration that his evaluation was "a part of" his FRA testing, not a reportable health event. And in any case, it says, he did not experience the kind of significant vision change needed to qualify as a reportable health event. DeGeer responds that failing the signal tests was a "new diagnosis"—color vision no longer sufficient to do the job—or at the very least, it indicated a possible vision change.

We agree with the district court here that whether the class definition included DeGeer is a "close call." Because we think both positions have merit, we need not decide who has the right of the argument. *See DeFries*, 104 F.4th at 1107 (observing that "the better reading of the definition" is that failing the "color-vision testing protocol is a 'reportable health event'"); *Zaragoza*, 2024 WL 3755612, at *6 (finding that plaintiff's "failed Ishihara test in 2016 at least suggested that his previously certified color vision acuity may have no longer been passable, such that it met the definition of a 'reportable health event'"). What matters is the "genuine ambiguity" in the definition's scope. *DeFries*, 104 F.4th at 1107; *cf. Sawtell*, 22 F.3d at 253–54 (holding that *American Pipe* did not toll plaintiff's claim where she "presented no evidence supporting the inference she was a putative member" and "the narrowness of the class definitions was clear").

Because the *Harris* class did not unambiguously exclude DeGeer when the district court certified it under a narrowed definition, he was entitled to *American Pipe* tolling. To hold otherwise would frustrate the purposes of the rule. *American Pipe* does not require bystander plaintiffs like DeGeer "to follow the class action closely, looking for any change in the class definition and carefully parsing what it might mean." *DeFries*, 104 F.4th at 1099. He was a member of the original class that was not unambiguously narrowed when certified, so it was reasonable for him

to rely[1] on the *Harris* class to continue to press his claims. *See Crown, Cork,* 462 U.S. at 352–53. And Union Pacific had notice of DeGeer and his claims. *See id.* Challenging certification of what it called a "sprawling" and "diverse" class, it pointed to the "personal stories of the 44 declarants" as justification for reversal because they revealed different triggering events for the fitness-for-duty evaluations and a "broad[] universe" of conditions, including "vision deficiencies."

Whether or not the *Harris* district court *should have* found that the narrowed definition excluded plaintiffs like DeGeer, no one—not the district court, not the named plaintiffs, not DeGeer, not even Union Pacific—thought that the court did. Statutory limitation periods are not "trap[s] for the unwary." *Am. Pipe*, 414 U.S. at 551 n.21 (citation omitted). They are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Id.* at 554 (quoting *Ord. of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944)). Union Pacific cannot claim surprise. Nor can DeGeer be accused of sleeping on his rights.

IV.

Because *American Pipe* tolled DeGeer's claims during the pendency of the *Harris* class, we reverse the district court's judgment and remand the case for further proceedings.

———————————————————

[1]That isn't to say that the availability of *American Pipe* tolling turns on whether a plaintiff can show that he has pursued his "claims with requisite diligence." *Barryman-Turner v. District of Columbia*, 115 F. Supp. 3d 126, 132 (D.D.C. 2015). The Supreme Court explicitly disclaimed actual reliance. "[P]otential class members are mere passive beneficiaries of the action brought in their behalf" and even "asserted class members who were unaware of the proceedings brought in their interest or who demonstrably did not rely on the institution of those proceeding" enjoy the protections of this broad tolling rule. *Am. Pipe*, 414 U.S. at 551–52.