**YI XIANG, et. al., Plaintiffs,**

v.

**INOVALON HOLDINGS, INC., et al., Defendants.**

**16–CV–4923 (VM)**

United States District Court, S.D. New York.

Signed 05/23/2017

---

William Scott Holleman, Johnson & Weaver, LLP, New York, NY, Samuel Howard Rudman, Robbins Geller Rudman & Dowd LLP (LI), Melville, NY, for Plaintiffs.

Susan Leslie Saltzstein, Skadden, Arps, Slate, Meagher & Flom LLP, John J. Clarke, Jr., Marc Aaron Silverman, DLA Piper US LLP, New York, NY, James R. Carroll, Pro Hac Vice, Skadden, Arps, Slate, Meagher & Flom, L.L.P., Boston, MA, Hugh Jewett Marbury, DLA Piper LLP, East Palo Alto, CA, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Lead Plaintiff Roofers Local No. 149 Pension Fund ("Lead Plaintiff"), individually and on behalf of all others similarly situated, filed a complaint ("Consolidated Complaint," Dkt. No. 66) against sixteen defendants: Inovalon Holdings, Inc. ("Inovalon"); six of Inovalon's officers and directors, Keith R. Dunleavy, Thomas R. Kloster, Denise K. Fletcher, Andre S. Hoffmann, Lee D. Roberts, and William J. Teuber Jr. (collectively, "Individual Defendants"); and nine financial services companies that acted as underwriters for Inovalon's Initial Public Offering ("IPO"): Goldman Sachs & Co., Morgan Stanley & Co. LLC, Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith, Incorporated, UBS Securities LLC, Piper Jaffray & Co., Robert W. Baird & Co. Incorporated, Wells Fargo Securities, LLC, and William Blair & Company, L.L.C. (collectively, "Underwriter Defendants," together with Inovalon and the Individual Defendants, "Defendants").

On March 3, 2017, the Defendants submitted correspondence to the Court regarding certain alleged deficiencies in the Consolidated Complaint and sought leave to move to dismiss the Consolidated Complaint. (Dkt. No. 68.) The Court now construes this correspondence as a Motion to Dismiss the Consolidated Complaint ("Motion"). For the reasons stated below, the Motion is DENIED in part and GRANTED in part.

## I. BACKGROUND

Plaintiff Yi Xiang originally filed a complaint in this action on June 24, 2016. (Dkt. No. 1.) After this case was consolidated with a related case, Patel et. al. v. Inovalon Holdings, Inc. et. al., No. 16–cv–5065, Roofers Local No. 149 Pension Fund was appointed Lead Plaintiff for the Class, and class counsel was appointed. (See Dkt. Nos. 36, 63.) Lead Plaintiff then promptly filed the Consolidated Complaint. The Consolidated Complaint alleges that Inovalon negligently included untrue statements of material fact and omitted material facts from the Registration Statement and Prospectus (collectively, the "Registration") issued in connection with Inovalon's IPO. Specifically, the Consolidated Complaint alleges that Defendants failed to disclose that Inovalon derived significant revenues from New York-based customers, and that Inovalon would be subject to substantially increased taxes in New York State and New York City, resulting in a material increase in its effective tax rate and a significant decrease in Inovalon's earnings. Lead Plaintiff asserts three causes of action: (1) violation of Section 11 of the Securities Act of 1933 (the "Securities Act") against all Defendants; (2) violation of Section 12(a)(2) of the Securities Act against all defendants; and (3) violation of Section 15 of the Securities Act against Inovalon and the Individual Defendants. Lead Plaintiff seeks damages, attorneys' fees and costs, rescission or rescissory damages, and other equitable relief.

Shortly after filing of the Consolidated Complaint, Defendants sought permission to move to dismiss it. (See Motion.) The Motion attached a February 21, 2017 letter from Defendants to Lead Plaintiff regarding the contemplated Motion ("February 21 Letter"), a February 28, 2017 letter from Lead Plaintiff to Defendants opposing the Motion ("February 28 Letter") and

a March 3, 2017 letter from Defendants to the Court. (See id.) Defendants argue in the February 21 Letter that the Consolidated Complaint is deficient and should be dismissed because: (1) the claims are time-barred as the action was filed more than one year after Lead Plaintiff should reasonably have discovered the alleged untrue statements and omissions; (2) Lead Plaintiff fails to allege a material misstatement or omission that was required to be disclosed; (3) the Consolidated Complaint should be dismissed for negative causation; (4) Lead Plaintiff does not have standing to assert a claim pursuant to Section 12(a)(2) of the Securities Act against the Individual Defendants or Underwriter Defendants because neither the Individual nor the Underwriter Defendants are "statutory sellers"; and (5) with regards to the Section 15 Securities Act claim, Lead Plaintiff fails to allege a primary Securities Act violation. (See id.)

Lead Plaintiff opposes the Motion and argues in its February 28 Letter that the Consolidated Complaint is sufficient at this stage because: (1) the claims are not time-barred because Lead Plaintiff did not have all the facts necessary to plead the elements of the claims until August 2015, when Inovalon disclosed the severe impact of the increased state tax liability on its earnings and Inovalon's share price dropped 30 percent; (2) the Consolidated Complaint alleges that the Registration misstated the tax by over 10 percent and further, upon disclosure, the price of Inovalon stock dropped by 30 percent, constituting a material misrepresentation; (3) negative causation, which is a complex question of fact, cannot be established on the pleadings; (4) the Consolidated Complaint sufficiently pleads each Defendant's status as a statutory seller; and (5) the Section 15 claims are sufficiently plead.

## II. DISCUSSION

### A. Statute of Limitations

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 n.12 (2d Cir. 2014). Securities Act claims must be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. Section 77m; see also Merck & Co. v. Reynolds, 559 U.S. 633, 656, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010) (Stevens, J., concurring in part and concurring in the judgment) (establishing the one-year statute of limitations for Securities Act claims). Although the Second Circuit has left the question open regarding whether the "inquiry notice" or "discovery rule" applies, In re Magnum Hunter Res. Corp. Sec. Litig., 616 Fed.Appx. 442, 447 (2d Cir. 2015), "[t]he majority of courts in this district" have maintained that inquiry notice applies to Section 11 claims. See e.g., Youngers v. Virtus Inv. Partners Inc., 195 F.Supp.3d 499, 520 (S.D.N.Y. 2016); Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp., 874 F.Supp.2d 341, 364 (S.D.N.Y. 2012). The Second Circuit has stated that a "reasonably diligent plaintiff has not 'discovered' one of the facts constituting a securities fraud violation until he can plead that fact with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 175 (2d Cir. 2011).

In order for the statute of limitations to begin running, disclosures do not have to "perfectly match the allegations that a plaintiff chooses to include in its

complaint." In re Magnum Hunter Res. Corp. Sec. Litig., 26 F.Supp.3d 278, 302 (S.D.N.Y. 2014), aff'd, 616 Fed.Appx. 442 (2d Cir. 2015). However, the disclosures still must "relate [ ] directly to the misrepresentations and omissions" that are alleged. Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 427 (2d Cir. 2008) (quoting Newman v. Warnaco Grp., Inc., 335 F.3d 187, 193 (2d Cir. 2003)).

■ As the original complaint in this action was filed on June 24, 2016, if the Consolidated Complaint alleges facts under which a reasonably diligent plaintiff should have discovered Inovalon's untrue statements and omissions prior to June 24, 2015, the Consolidated Complaint is time barred. The Consolidated Complaint does contain allegations that Inovalon made disclosures about its increased effective tax rate prior to June 24, 2015. First, in March 2015, Inovalon's annual financial report stated that its effective income tax rate increased in 2014 from 38 percent to 40 percent, due primarily to an increase in its state income tax rate. (Consolidated Complaint ¶ 37.) Second, on May 6, 2015, Inovalon announced that for the first quarter of 2015 its effective tax rate increased to 41 percent. (Consolidated Complaint ¶ 38.) Third, on May 8, 2015, Inovalon filed a Form 10–Q ("May 8 Quarterly Report") stating that it was subject to an effective tax rate of 43 percent for the first quarter of 2015, and that this development was due to an increase in state income taxes. (Consolidated Complaint ¶ 39.)

These disclosures indicate that Inovalon mentioned the changes in tax rate prior to June 24, 2015, and are similar to the allegations Lead Plaintiff makes in the Consolidated Complaint:

- That "as a result of recent New York tax law changes, [Inovalon] would be subject to substantially increased taxes such that its effective tax rate would materially increase[.]" (Consolidated Complaint ¶ 31);

- "that Inovalon was already subject to higher corporate tax rates … and would have to pay increased tax and its effective tax rate had materially increased," (Consolidated Complaint ¶ 33); and

- the risk of the "increase in Inovalon's effective tax rate and the then known material adverse impact on the Company's 2015 financial results and its future financial prospects." (Consolidated Complaint ¶ 34.)

Lead Plaintiff argues that the March and May 2015 disclosures did not reveal the untrue statements and omissions as they did not include "the severe impact on [Inovalon's] earnings and full-year forecasts." (February 28 Letter at 2.) Lead Plaintiff relies on In re Bear Stearns Mortg. Pass–Through Certificates Litig., 851 F.Supp.2d 746 (S.D.N.Y. 2012), to argue that, even if the May disclosures contained some information about their claims, they did not provide enough information to enable pleading of a Securities Act violation "with sufficient particularity to survive a 12(b)(6) motion to dismiss," which would require stating "a claim supportive of statutory damages." Id. at 765. As that determination requires a fact-intensive inquiry, "a motion to dismiss will only be granted where uncontroverted evidence irrefutably demonstrates [that the] plaintiff discovered or should have discovered facts sufficient to adequately plead a claim." Id. at 763. Specifically, Lead Plaintiff would have been unable to properly plead a claim for damages prior to the significant price drop of Inovalon stock in August 2015. While Lead Plaintiff may have had some evidence that Inovalon may have made certain misrepresentations before June 2015, it likely would not have been able to show any compensable dam-

age as a result of those misrepresentations until August 2015. At a minimum, it is not irrefutable that Lead Plaintiff would have been able to adequately plead a claim before June 2016.

Defendants' argument that there is sufficient information indicating that a reasonably diligent plaintiff would have been able to bring suit as late as May 2015 is unavailing. The cases Defendants cite in support of their argument are distinguishable from the case at hand. In Youngers v. Virtus Inv. Partners Inc., credible newspaper reports had revealed the "exact allegations contained in the Complaint" over a year before plaintiffs filed the complaint. 195 F.Supp.3d at 521. Here, only some of the allegations contained in the Consolidated Complaint were detailed in Inovalon's May 8 Quarterly Report, and those disclosures were likely insufficient to support adequate pleading of a cause of action at that point in time. In Rudman v. CHC Grp. LTD., the disclosures that occurred outside of the statute of limitations were also followed directly by "the largest single-day decline [of stock] in the company's history." 217 F.Supp.3d 718, 723 (S.D.N.Y. 2016). Thus, all of the elements necessary to plead a cause of action, including damages, were known to plaintiffs over a year before suit was filed. In this case, plaintiffs contend that Inovalon did not disclose the negative impact the tax changes would have on its earnings until August 2015 and, notably, it was not until then that Inovalon's stock price plummeted. Unlike the circumstances in Rudman, it is difficult to see how Lead Plaintiff could have foreseen the impact some of the disclosures Inovalon made in May 2015 would have on the future of the company and its stock price sufficient to permit the pleading of the claims alleged and damages resulting from those claims.

While this is a close question, at this stage the Court must accept the factual pleadings as true and resolve any doubts in Lead Plaintiff's favor. Under this standard, the Court is not convinced that Defendants have provided uncontroverted evidence that the Lead Plaintiff should have discovered facts sufficient to plead their claim prior to June 24, 2015. The Court is persuaded that the evidence currently on the record indicates that Lead Plaintiff would not have possessed enough information to have been able to allege a claim until August of 2015, making their action timely.

## B. Materiality

Section 11 of the Securities Act provides a cause of action based on a registration statement that "omitted to state a material fact required to be stated therein." 15 U.S.C. Section 77k(a). Material facts required to be stated in a registration statement include "known trends or uncertainties" under Item 303, and "the most significant factors that make the offering speculative or risky" under Item 503. SEC Regulation S–K, 17 C.F.R. Section 229.303; 17 C.F.R. Section 229.503. Section 12(a)(2) creates liability based on communications that "omit[ ] to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading." 15 U.S.C. Section 77l(a)(2).

 "[A] misstatement related to less than 5% of a financial statement carries the preliminary assumption of immateriality." IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 390 (2d Cir. 2015) (citing 64 Fed. Reg. 45150, 45151 (Aug. 19, 1999)). This assumption can be overcome by qualitative factors, such as "whether a known misstatement may result in a significant positive or negative market reaction." Id. at 391; see also 64 Fed. Reg. 45150, 45152

(Aug. 19, 1999) ("[T]he demonstrated volatility of the price of a registrant's securities in response to certain types of disclosures may provide guidance as to whether investors regard quantitatively small misstatements as material[.]") Evidence of a change in stock prices will be relevant to the determination of materiality only if the changes are attributable solely to disclosures correcting the alleged misstatements or omissions. See Hutchison v. Deutsche Bank Sec. Inc., 647 F.3d 479, 490 (2d Cir. 2011) (affirming dismissal of complaint where allegations of materiality were based on a misstatement of 4.7 percent and a decline in stock price of 18 percent which followed press releases that were "loaded with news (largely very bad), any item of which could have caused [the company's] stock price to drop").

■ The parties dispute whether the alleged misstatement meets the five percent threshold. Defendants argue that the change in the tax rate from 39 percent to 43 percent is only four percentage points and, as such, immaterial. Lead Plaintiff contends that a change from 39 percent to 43 percent is a relative change of the tax rate of over 10 percent, making the misstatement material.

Lead Plaintiff's argument that a relative change in the tax rate of over 10 percent should be considered a material misstatement is supported by the subsequent 30 percent drop in Inovalon's stock prices after the disclosure of the tax rate increase. (Consolidated Complaint, ¶¶ 45–47). This significant drop in the stock price provides "guidance as to whether investors regard quantitatively small misstatements as material." 64 Fed. Reg. 45150, 45152 (Aug. 19, 1999). The Court is persuaded that, given the significant impact the alleged material misstatement had on the stock price of Inovalon, Lead Plaintiff has properly alleged a material misstatement.

## C. Item 303

■ Lead Plaintiff alleges that Item 303 required Inovalon to disclose the tax reforms that would increase Inovalon's effective tax rate to 43 percent. (Consolidated Complaint ¶¶ 28–31.) Under Item 303, Inovalon was required to disclose "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. Section 229.303. "The SEC has provided guidance on Item 303, clarifying that disclosure is necessary 'where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial conditions or results of operations.'" Stratte–McClure v. Morgan Stanley, 776 F.3d 94, 101 (2d Cir. 2015) (quoting Exchange Act Release No. 6835).

■ A complaint alleging known trends or uncertainties must allege "specific facts from which [the court] could draw the 'plausible inference' that defendants had actual knowledge of the trends or uncertainties at the time the registration statement was issued." Medina v. Tremor Video, Inc., 640 Fed.Appx. 45, 48 (2d Cir. 2016) (affirming dismissal of complaint that alleged that "publicly available information made [the trends and uncertainties] 'apparent'" and alleged "suppositions of what defendants 'would have' known or were 'in a position to know'", but did not assert what defendants actually knew).

The Consolidated Complaint alleges that the State of New York had already changed its tax laws by the time of the IPO and that "it was widely expected" that New York City would soon follow suit. (Consolidated Complaint ¶¶ 19–26.) Specifically, Lead Plaintiff alleges that "[a]s a Deloitte Client, Inovalon would have re-

ceived Deloitte's January 23, 2015 client alert" regarding the tax reform changes. (Consolidated Complaint ¶ 24.) This allegation regarding the Deloitte news alert distinguishes this case from Medina, where plaintiffs relied purely on public information to allege that defendants had actual knowledge. The Deloitte news alert was a targeted e-mail sent to the Defendants that would have informed them about the tax change. See Medina, 640 Fed.Appx. at 48.

Rather, Hutchison v. Deutsche Bank Sec. Inc., 647 F.3d 479 (2d Cir. 2011), is instructive here. There, the plaintiffs alleged that a third party had knowledge of certain facts and was required to inform defendants of those facts. The court found that there was a plausible inference that the third party had informed defendants of those facts and, as such, that defendants had the requisite knowledge required under Item 303. Id. at 486. Here, Lead Plaintiff has similarly alleged that Deloitte, a third party, had the relevant knowledge of the tax reforms that would impact Inovalon and that Inovalon, as a client of Deloitte, would have been informed by Deloitte of these events in a specific news alert. The Court finds that these allegations give rise to a plausible inference that Defendants had actual knowledge as required by Item 303.

Defendants' additional argument that the Consolidated Complaint does not plausibly allege that Defendants reasonably expected the tax law changes to have a material impact on Inovalon is unconvincing. (February 21 Letter at 2.) Even if Defendants were not certain about the likely effect of the tax law changes on their future revenues, Defendants were still "required under Item 303 to disclose the manner in which that then-known trend, event, or uncertainty might reasonably be expected to materially impact [Inovalon's] future revenues." Indiana Pub. Ret. Sys. v. SAIC,

Inc., 818 F.3d 85, 96 (2d Cir. 2016). The Court finds that Lead Plaintiff has sufficiently pleaded allegations to satisfy Item 303.

## D. Negative Causation

 "[P]laintiffs bringing claims under sections 11 and 12(a)(2) need not allege ... loss causation, but section 11(e) makes the absence of loss causation an affirmative defense." In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig., 774 F.Supp.2d 584, 588 (S.D.N.Y. 2011) (internal citations omitted). "Defendants may assert the absence of loss causation as an affirmative defense to claims under Sections 11 and 12(a)(2) by proving that the allegedly misleading representations did not cause the depreciation in the stock's value." In re Britannia Bulk Holdings Inc. Sec. Litig., 665 F.Supp.2d 404, 418 (S.D.N.Y. 2009); see also 15 U.S.C. Sections 77l(b), 77k(e). A complaint "may be dismissed if a defendant can prove that it is apparent on the face of the complaint that the alleged loss is not causally connected to the misrepresentations at issue." In re State St. Bank & Trust Co., 774 F.Supp.2d at 588. Therefore, "[d]efendants bear the burden of demonstrating that something other than the alleged omissions or misstatements at issue caused plaintiffs' loss." In re Facebook, Inc. IPO Sec. & Derivative Litig., 986 F.Supp.2d 487, 523 (S.D.N.Y. 2013).

 Defendants assert a negative causation defense, arguing that Inovalon's August 5, 2015 press release revealed nothing about any alleged misstatements and, as such, the losses Lead Plaintiff may have suffered after that disclosure were not causally connected to the alleged misstatement. This argument falls short for two distinct reasons. First, Defendants have not offered an alternative explanation regarding what may have caused the alleged

loss in this case. Defendants merely assert that the corrective disclosures are not the cause of the loss. This conclusory statement is insufficient to meet their high burden of either "demonstrating that something other than the alleged omissions or misstatements at issue caused plaintiffs' loss," In re Facebook, 986 F.Supp.2d at 523, or showing that it "is apparent on the face of the complaint" that the alleged loss is not causally connected with the alleged misstatements in the Registration statement. In re State St. Bank & Trust Co., 774 F.Supp.2d at 588.

■■■ Second, whether the corrective disclosures actually caused the price of Inovalon stock to drop is a question of fact that is not appropriate for resolution at this stage. See, e.g., In re Facebook, 986 F.Supp. at 523 ("Whether the May 19 and May 22 Reuters reports constituted corrective disclosures that revealed Facebook's alleged omissions or misrepresentations and whether such disclosures actually caused the drop in Facebook stock prices are issues of fact and are not appropriate for resolution in the motion to dismiss stage."); In re Giant Interactive Grp., Inc. Sec. Litig., 643 F.Supp.2d 562, 572 (S.D.N.Y. 2009)("Because it is unnecessary to plead loss causation to maintain claims under Sections 11 and 12, the affirmative defense of negative causation is generally not properly raised on a Rule 12(b)(6) motion."); In re Fuwei Films Sec. Litig., 634 F.Supp.2d 419, 444 (S.D.N.Y. 2009)("Given the burden on Defendants to establish an affirmative defense such as negative causation, the Court finds that dismissal on this ground is more properly considered on a motion for summary judgment.").

Because of Defendants' failure to meet their burden of proof for a negative causation defense, and the fact-intensive nature of the inquiry at issue, the Court is persuaded that dismissal of the Consolidated Complaint based on negative causation would be premature.

E. Statutory Seller

■■■ "A plaintiff has standing to bring a Section 12 claim only against a 'statutory seller' from which it 'purchased' a security." In re Lehman Bros. Sec. & Erisa Litig., 799 F.Supp.2d 258, 310 (S.D.N.Y. 2011) (citing Akerman v. Oryx Commc'ns, Inc., 810 F.2d 336, 344 (2d Cir. 1987)). A statutory seller is someone who "(1) passed title, or other interest in the security, to the buyer for value, or (2) successfully solicited the purchase of a security, motivated at least in part by a desire to serve his own financial interests or those of the securities' owner." In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 359 (2d Cir. 2010) (quoting Pinter v. Dahl, 486 U.S. 622, 642, 647, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988)).

Defendants argue that the Section 12 Securities Act claims should be dismissed as against both the Individual Defendants and the Underwriter Defendants because Lead Plaintiff has failed to allege that they are statutory sellers.

1. Individual Defendants

Lead Plaintiff argues that the Individual Defendants were officers and directors and signed the Registration and, as such, qualify as statutory sellers. (February 28, 2017 Letter at 3.) The Second Circuit has not yet determined whether signing a registration statement by itself makes an individual a statutory seller. However, in Citiline Holdings, Inc. v. iStar Fin. Inc., 701 F.Supp.2d 506 (S.D.N.Y. 2010), a court in this district held that, "an individual's signing a registration statement does not itself suffice as solicitation under Section 12(a)(2)." The court based its holding on three factors: First, "[e]very Court of Appeals to have considered the issue" has

found signing a registration statement alone is not enough to make an individual a statutory seller. Id. at 512. Second, the statutory scheme expressly imposes Section 11 liability upon every signer of a registration statement, but does not do so for Section 12. This omission suggests a deliberate choice by legislators to decline to extend Section 12 liability to mere signers of the registration statement and require something more for an individual to be classified as a statutory seller. Third, the Supreme Court's decision in Pinter v. Dahl, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), stated that "Congress did not intend to impose liability under Section 12 'for mere participation in unlawful sales transactions,'" which indicates that signing the registration statement alone is insufficient to make an individual a statutory seller. Id. at 512 (quoting Pinter at 650, 108 S.Ct. 2063).

Courts in this District have consistently followed the rule from Citiline since the decision was issued. See Youngers, 195 F.Supp.3d 499 (following Citiline); In re Am. Realty Capital Properties, Inc. Litig., No. 15-mc-40, 2015 WL 6869337 (S.D.N.Y. Nov. 6, 2015) (dismissing Section 12(a)(2) claims for complaint's failure to allege that director defendants solicited securities); In re OSG Sec. Litig., 971 F.Supp.2d 387 (S.D.N.Y. 2013) (noting that although prior to 2010, the courts in the Southern District of New York had held that signing a registration statement constitutes solicitation, more recent cases from this district, including Citiline, and several Courts of Appeals, have all held that merely signing the registration statement does not constitute solicitation); City of Westland Police & Fire Ret. Sys. v. MetLife, Inc., 928 F.Supp.2d 705 (S.D.N.Y. 2013); McKenna v. Smart Techs. Inc., No. 11-cv-7673, 2012 WL 1131935, at *18 (S.D.N.Y. Apr. 3, 2012) (noting that all district court cases contrary to Citiline predate Citiline and failed to "consider rulings of Courts of Appeals outside the Second Circuit or the rationale underlying Pinter").

As other courts in this District have also recognized, this Court finds Citiline's analysis to be well reasoned and based on the statutory scheme, Supreme Court precedent, and decisions from other Courts of Appeals. As such, the Court concludes that the mere signing of a registration statement does not render an individual a statutory seller within the purview of Section 12. As Lead Plaintiff has not alleged that the Individual Defendants sold or solicited the sale of securities, except to allege that they signed the Registration and were officers and directors of Inovalon, Lead Plaintiff has failed to allege that the Individual Defendants were statutory sellers. Accordingly, the Court finds that the Section 12 claim as to the Individual Defendants should be dismissed.

## 2. Underwriter Defendants

"To have standing against an underwriter, a plaintiff must allege that he purchased securities pursuant to the pertinent offering documents." In re MF Glob. Holdings Ltd. Sec. Litig., 982 F.Supp.2d 277, 323 (S.D.N.Y. 2013) (internal quotation marks omitted). However, "[t]he mere ability to trace back securities to the offering, without allegations of direct purchase, are insufficient." Id.

The Consolidated Complaint alleges that "Lead Plaintiff and the other members of the class purchased Inovalon shares pursuant to the Registration Statement and Prospectus," and that "[t]he Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Lead Plaintiff and the other members of the Class." (Consolidated Complaint ¶¶ 69, 10(e).) The Consolidated Complaint thus properly al-

leges that plaintiffs purchased securities pursuant to the pertinent document, in this case, the Registration Statement. The Court is persuaded that these statements are sufficient to allege that the Underwriter Defendants are statutory sellers under Section 12. Thus, the motion to dismiss with regards to the Section 12 claim as to the Underwriter Defendants is denied.

### F. Section 15

 Finally, with respect to Lead Plaintiff's Section 15 claim, "the success of a claim under section 15 relies, in part, on a plaintiff's ability to demonstrate primary liability under sections 11 and 12." In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 358 (2d Cir. 2010). As the Court has found that Lead Plaintiff has sufficiently alleged a Section 11 claim as to all Defendants and a Section 12 claim as to the Underwriter Defendants, Lead Plaintiff can also properly bring a related Section 15 claim.

## II. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 68) of defendants Inovalon Holdings, Inc. ("Inovalon"); Keith R. Dunleavy, Thomas R. Kloster, Denise K. Fletcher, Andre S. Hoffmann, Lee D. Roberts, and William J. Teuber Jr. (collectively, the "Individual Defendants"); Goldman Sachs & Co., Morgan Stanley & Co. LLC, Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith, Incorporated, UBS Securities LLC, Piper Jaffray & Co., Robert W. Baird & Co. Incorporated, Wells Fargo Securities, LLC, and William Blair & Company, L.L.C. (collectively, the "Underwriter Defendants," collectively with Inovalon and the Individual Defendants, "Defendants") to dismiss the consolidated complaint (Dkt. No. 66) is **GRANTED** as to the Section 12 claims against the Indi-

vidual Defendants and otherwise **DENIED**.

**SO ORDERED.**