**YI XIANG, et al., Plaintiffs,**

v.

**INOVALON HOLDINGS, INC., et al., Defendants.**

**16–CV–4923 (VM)**

United States District Court, S.D. New York.

Signed July 27, 2017

Filed 07/28/2017

William Scott Holleman, Johnson & Weaver, LLP, New York, NY, Samuel Howard Rudman, Robbins Geller Rudman & Dowd LLP, Melville, NY, for Plaintiffs.

Susan Leslie Saltzstein, Skadden, Arps, Slate, Meagher & Flom LLP, John J. Clarke, Jr., Marc Aaron Silverman, DLA Piper US LLP, New York, NY, James R. Carroll, Skadden, Arps, Slate, Meagher & Flom, L.L.P., Boston, MA, Hugh Jewett Marbury, DLA Piper LLP, East Palo Alto, CA, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Lead plaintiff Roofers Local No. 14 9 Pension Fund ("Lead Plaintiff"), individually and on behalf of all others similarly situated, filed a complaint ("Consolidated Complaint," Dkt. No. 66) against sixteen defendants: Inovalon Holdings, Inc. ("Inovalon"); six of Inovalon's officers and directors, Keith R. Dunleavy, Thomas R. Kloster, Denise K. Fletcher, Andre S. Hoffmann, Lee D. Roberts, and William J. Teuber Jr. (collectively, the "Individual Defendants"); and nine financial services companies that acted as underwriters for Inovalon's Initial Public Offering ("IPO"): Goldman Sachs & Co., Morgan Stanley & Co. LLC, Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith, Incorporated, UBS Securities LLC, Piper Jaffray & Co., Robert W. Baird & Co. Incorporated, Wells Fargo Securities, LLC, and William Blair & Company, L.L.C. (collectively, the "Underwriter Defendants," together with Inovalon and the Individual Defendants, "Defendants").

On June 6, 2017, Defendants moved for reconsideration of the Court's May 23, 2017 Order denying Defendants' motion to dismiss ("Order," see Dkt. No. 69), and, by separate letter sent on the same day, requested interlocutory appeal if the Court denied Defendant's motion for reconsideration. (Collectively, "Motion," Dkt. Nos. 76, 77.) For the reasons below, Defendants' Motion is DENIED.

## I. BACKGROUND

Plaintiff Yi Xiang originally filed a complaint in this action on June 24, 2016. (See Dkt. No. 1.) After this action was consolidated with a related case, Patel et al. v. Inovalon Holdings, Inc. et al., No. 16–cv–5065, Roofers Local No. 149 Pension Fund was appointed Lead Plaintiff for the class, and class counsel was appointed. (See Dkt. Nos. 36, 63.) Lead Plaintiff then promptly filed the Consolidated Complaint. The Consolidated Complaint alleges that Inovalon negligently included untrue statements of material fact and omitted material facts from the Registration Statement

and Prospectus (collectively, the "Registration") issued in connection with Inovalon's IPO. Specifically, the Consolidated Complaint alleges that Defendants failed to disclose that Inovalon derived significant revenues from New York-based customers, and that Inovalon would be subject to substantially increased taxes in New York State and New York City, resulting in a material increase in its effective tax rate and a significant decrease in Inovalon's earnings. Lead Plaintiff asserts three causes of action: (1) violation of Section 11 of the Securities Act of 1933 (the "Securities Act") against Defendants; (2) violation of Section 12(a)(2) of the Securities Act against Defendants; and (3) violation of Section 15 of the Securities Act against Inovalon and the Individual Defendants. Lead Plaintiff seeks damages, attorneys' fees and costs, rescission or rescissory damages, and other equitable relief.

Shortly after Lead Plaintiff filed the Consolidated Complaint, Defendants sought leave to move to dismiss. (See Dkt. No. 68.) After the Court denied Defendants' motion to dismiss (see Order), Defendants promptly filed this Motion, requesting reconsideration and, in the event that the Court held that the "inquiry notice" standard is inapplicable in this case, certification of interlocutory appeal on the narrow question of which standard used to determine what constitutes "discovery" in the context of the Securities Act's statute of limitations controls. (See generally Motion.)

Defendants argue in their Motion that reconsideration of the Court's Order is warranted because: (1) the Court clearly erred in applying the "discovery rule" standard instead of the "inquiry notice" standard to determine when any potential claims should have been discovered by Lead Plaintiff under Section 11; (2) had the Court applied the "inquiry notice" standard, the Court would have found that the one year statute of limitations on Lead Plaintiff's claims had run, barring Lead Plaintiff's claims; and (3) the Court overlooked or misinterpreted controlling decisions or data that would alter the decision. (See Motion.)

Defendants separately request a certification of interlocutory appeal, arguing that: (1) the question of which standard is used to determine the accrual date for Lead Plaintiff's claims is a controlling question of law in this dispute; (2) there are substantial grounds for difference of opinion regarding which standard should be used; and (3) immediate appellate review would materially advance the termination of the litigation. (See Motion.)

Lead Plaintiff's June 20, 2017 opposition to Defendants' motion for reconsideration argues that: (1) Defendants fail to raise any arguments overlooked by the Court in their motion as the "discovery rule" standard, or the Merck standard, is the controlling standard; (2) the Court properly applied that standard; and (3) even under the "inquiry notice" standard, Lead Plaintiff's claims would not be time barred. (Dkt. No. 79.)

Lead Plaintiff further opposes a certification of interlocutory appeal via a June 8, 2017 letter (collectively with the June 20, 2017 filing, "Opposition," see Dkt. No. 78). Lead Plaintiff argues that: (1) which standard determines when the statute of limitations runs is not a controlling question of law, as the Complaint is not time barred under either standard; (2) a majority of courts in this Circuit follow the Merck standard; and (3) even if the Defendants won on appeal, it would not advance the termination of the case, as the Complaint would not be barred under the "inquiry notice" standard. (See id.)

## II. DISCUSSION

### A. LEGAL STANDARD

 Reconsideration of a previous order by the court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F.Supp.2d 613, 614 (S.D.N.Y. 2000) (internal citations and quotation marks omitted). The provision for reargument "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple . . . ." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citation and internal quotation marks omitted). "The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure Section 4478 at 790 (2d ed.)). For evidence to be considered "newly available," it must be "evidence that was truly newly discovered or could not have been found by due diligence." Space Hunters, Inc. v. United States, 500 Fed.Appx. 76, 81 (2d Cir. 2012) (internal quotation marks omitted).

 A district court may certify for interlocutory appeal an order that "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. Section 1292(b). "The moving party has the burden of establishing all three elements." Youngers v. Virtus Inv. Partners Inc., 228 F.Supp.3d 295, 298 (S.D.N.Y. 2017). But "even when the elements of section 1292(b) are satisfied, the district court retains 'unfettered discretion' to deny certification." Garber v. Office of the Comm'r of Baseball, 120 F.Supp.3d 334, 337 (S.D.N.Y. 2014) (quoting National Asbestos Workers Med. Fund v. Philip Morris, Inc., 71 F.Supp.2d 139, 162–63 (E.D.N.Y. 1999)). "Interlocutory appeals are strongly disfavored in federal practice." In re Ambac Fin. Grp., Inc. Sec. Litig., 693 F.Supp.2d 241, 282 (S.D.N.Y. 2010). Certification of an interlocutory appeal "is not intended as a vehicle to provide early review of difficult rulings in hard cases." In re Levine, No. 94-44257, 2004 WL 764709, at 2 (S.D.N.Y. Apr. 9, 2004). Instead, "only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F.Supp.2d 524, 529–30 (S.D.N.Y. 2014) (quoting McNeil v. Aguilos, 820 F.Supp. 77, 79 (S.D.N.Y. 1993)) (alteration in original).

### B. APPLICATION

#### 1. Controlling Standard for When a Claim is "Discovered"

There is some confusion and dispute among courts within this District regarding which standard should be used to determine when the facts that give rise to a potential securities law claim is deemed "discovered" and, as such, when the statute of limitations begins to run under the Securities Act. While an "inquiry notice" standard was previously applied within this Circuit, the Supreme Court, in the context of an Exchange Act claim, expressly disclaimed the "inquiry notice" standard, holding:

> If the term "inquiry notice" refers to the point where the facts would lead a reasonably diligent plaintiff to investigate

further, that point is not necessarily the point at which the plaintiff would already have discovered facts showing scienter or other "facts constituting the violation." But the statute says that the plaintiff's claim accrues only after the "discovery" of those latter facts. Nothing in the text suggests that the limitations period can sometimes begin before "discovery" can take place. Merck points out that . . ., the court-created "discovery rule" exception to ordinary statutes of limitations is not generally available to plaintiffs who fail to pursue their claims with reasonable diligence. But we are dealing here with a statute, not a court-created exception to a statute. Because the statute contains no indication that the limitations period should occur at some earlier moment before "discovery," when a plaintiff would have begun investigating, we cannot accept Merck's argument.

Merck & Co. v. Reynolds, 559 U.S. 633, 650–51, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010) (citations omitted).

The Supreme Court then adopted a standard whereby the statute of limitations begins to run when "the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation.'" Id. at 653, 130 S.Ct. 1784. Defendants' arguments in this case turn on whether the standard set forth in Merck or the "inquiry notice" standard controls in Securities Act claims and whether, if in fact the "inquiry notice" standard does control, that circumstance would provide a basis for reconsideration of the Court's Order.

While the Second Circuit has established that Merck applies to Exchange Act claims, City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 174 (2d Cir. 2011), the Second Circuit has not explicitly extended the Merck standard to

apply to violations of the Securities Act. See In re Magnum Hunter Res. Corp. Sec. Litig., 616 Fed.Appx. 442, 447 (2d Cir. 2015) (finding that the Court "need not conclusively decide this question" as under either standard the claims at issue would be barred).

Courts within this District are split on this question. A significant number of District Courts have extended the Merck standard to apply to Securities Act claims based on the similarity of the relevant language of the two statutes. See, e.g., Federal Hous. Fin. Agency v. Nomura Holding Am., Inc., 60 F.Supp.3d 479, 502–503, n.34 (S.D.N.Y. 2014)(applying the Merck standard, finding that "Section 13 is a similar statutory exception, as it provides that accrual is triggered by 'the discovery of the untrue statement or omission'— which constitutes the violation, as Sections 11 and 12(a)(2) impose strict liability for material misrepresentations"); Federal Hous. Fin. Agency v. UBS Americas, Inc., 858 F.Supp.2d 306, 319 (S.D.N.Y. 2012), aff'd, 712 F.3d 136 (2d Cir. 2013)(applying Merck standard to Securities Act claim after noting that "[b]oth statutes use the plaintiff's 'discovery' of the factual predicate of the claim as the triggering date for the statute of limitations."); In re Bear Stearns Mortg. Pass–Through Certificates Litig., 851 F.Supp.2d 746, 762 (S.D.N.Y. 2012)("The question before the Court is whether the Supreme Court's invalidation of the inquiry notice standard for '34 Act claims extends to claims brought under Sections 11 and 12(a)(2) of the '33 Act. The Court concludes, in accord with the majority of judges in this district, that it does."); New Jersey Carpenters Health Fund v. Residential Capital, LLC, No. 08 CV 5093, 2011 WL 2020260, at *4 (S.D.N.Y. May 19, 2011)(same); Brecher v. Citigroup Inc., 797 F.Supp.2d 354, 366 (S.D.N.Y. 2011), vacated on other grounds, No. 09 CIV.

7359, 2011 WL 5525353 (S.D.N.Y. Nov. 14, 2011)(same); In re Wachovia Equity Sec. Litig., 753 F.Supp.2d 326, 370 (S.D.N.Y. 2011)(applying Merck to a Securities Act claim).

As many of these decisions note, the Second Circuit has previously recognized that the statute of limitations provisions of both the Securities and the Exchange Acts are similar, as "the statutory periods for claims under either of these provisions begin to run when the claim accrued or upon discovery of the facts constituting the alleged fraud." Dodds v. Cigna Sec., Inc., 12 F.3d 346, 350 (2d Cir. 1993). It logically follows, then, to apply the same standard to both Acts.[1]

There are, however, a number of courts in this District that have found that the language of the statute of limitations sections in the two Acts is sufficiently different that Merck should not be applied to Section 11 or 12 claims. See, e.g., Youngers v. Virtus Inv. Partners Inc., 195 F.Supp.3d 499, 520–21 (S.D.N.Y. 2016), motion to certify appeal denied, 228 F.Supp.3d 295 (S.D.N.Y. 2017); Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp., 874 F.Supp.2d 341, 364–65 (S.D.N.Y. 2012) ("The majority of courts in this district declined to apply Merck to Section 11 claims, and Plaintiff offers no convincing argument for why this Court should decide otherwise."); In re IndyMac Mortg.–Backed Sec. Litig., 793 F.Supp.2d 637, 645 (S.D.N.Y. 2011), aff'd in part sub nom. Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc., 721 F.3d 95 (2d Cir. 2013)(applying inquiry notice rule to Securities Act claims).

Further still, some Courts have noted that one standard appears to be the pre-vailing standard within the District, but have declined to rule definitively on this question, as which standard applied was not outcome-determinative in the particular case. See, e.g., Rudman v. CHC Grp. LTD., 217 F.Supp.3d 718, 724 (S.D.N.Y. 2016), appeal dismissed sub nom. Rudman v. CHC Grp. LTD, (Dec. 7, 2016) ("The Court need not decide whether Merck applies to claims under Sections 11 and 12(a)(2) of the Securities Act, for the concept of inquiry notice would do no work in this case."); NECA–IBEW Pension Trust Fund v. Bank of Am. Corp., No. 10 CIV. 440, 2013 WL 620257, at *7 (S.D.N.Y. Feb. 15, 2013), aff'd sub nom. NECA–IBEW Pension Trust Fund v. Lewis, 607 Fed. Appx. 79 (2d Cir. 2015) ("Given the difference in the language of the two statutes of limitations, the logic of those Judges that have concluded that Merck does not extend to actions brought under the Securities Act is compelling. Nevertheless, I conclude that even if the more permissive Merck standard is applied, the claims alleged in the proposed SAC are time-barred, and, therefore, the proposed SAC is futile.").

The disagreement over the underlying issue within the District is remarkable, as evidenced by the decisions of two different courts within months of each other, both declaring that a majority of courts in the district favored two opposite rules. Compare Pennsylvania Public Sch. Employees' Ret. Sys. v. Bank of Am. Corp., 874 F.Supp.2d 341, 364 (S.D.N.Y. 2012) ("The majority of courts in this district declined to apply Merck to Section 11 claims....") with In re Bear Stearns Mortg. Pass–Through Certificates Litig., 851 F.Supp.2d 746, 762 (S.D.N.Y. 2012)("The question be-

---

1. Additionally, the only Circuit Court to directly consider this question, the Third Circuit, held that Merck applies to the Securities Act. See Pension Trust Fund for Operating Engineers v. Mortg. Asset Securitization Transactions, Inc., 730 F.3d 263, 273–74 (3d Cir. 2013).

fore the Court is whether the Supreme Court's invalidation of the inquiry notice standard for '34 Act claims extends to claims brought under Sections 11 and 12(a)(2) of the '33 Act. The Court concludes, in accord with the majority of judges in this district, that it does.").

Both Lead Plaintiff and Defendants argue that Koch v. Christie's Int'l PLC, 699 F.3d 141, 150 (2d Cir. 2012) supports their respective positions, but Koch provides little guidance here. In Koch, the Second Circuit considered whether to apply Merck to RICO actions. Unlike the circumstances in the instant case, however, there was prior Supreme Court precedent regarding the statute of limitations in RICO actions, specifically in Rotella v. Wood, 528 U.S. 549, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000), which Merck did not expressly overrule. The Second Circuit did focus on the language "constitutes a violation" as contained in the Exchange Act, not the language regarding discovery of facts. This analysis differs from the approach adopted by other courts that have applied Merck to the Securities Act context and that have focused on the similar language in the Securities and Exchange Acts regarding "discovery" of those facts or actions. Again, however, the Second Circuit in Koch was analyzing a much different statute on which other Supreme Court precedent controlled, making it inapplicable here.

Finally, Defendants cite dicta in a recent Supreme Court case, California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc., —— U.S. ——, 137 S.Ct. 2042, 198 L.Ed.2d 584 (2017), to support their argument that the "inquiry notice" standard controls. Defendants base this assertion on two lines of dicta in the opinion:

This view is confirmed by the two-sentence structure of Section 13. In addition to the 3–year time bar, Section 13 contains a 1–year statute of limitations. The limitations statute runs from the time when the plaintiff discovers (or should have discovered) the securities-law violation.

Id. at 2049–50. This language, however, does not differ from Merck, which also states that the statute of limitations runs from when the plaintiff discovered, or a reasonably diligent plaintiff would have discovered, the activity constituting the offense. The case, in fact, provides no guidance regarding Merck's applicability to Securities Act violations.

■ Having reviewed the extensive case law addressing this question, the Court notes that the weight of authority leans toward the courts which have applied the Merck statute of limitations standard to Securities Act cases and, further, those courts have provided more substantive analysis of the issues in so holding. The Court is persuaded by the logic of applying the Merck standard, as the language of the two statutes clearly mirror each other. The Securities Act provides that actions cannot be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence," while the Exchange Act bars actions "two years after the discovery of the facts constituting the violation." Compare 15 U.S.C. Section 77m, with 28 U.S.C. Section 1658. Both statutes are keyed to "discovery" of the facts constituting the violation. As Merck's analysis speaks to how to decide what constitutes "discovery" of those facts, it makes sense to also apply the Merck standard in interpreting another securities statute that employs the same term also in reference to prescribing the applicable statute of limitations. Accordingly, the Court finds that the Merck standard should be extended to apply to Securities Act cases.

## 2. Reconsideration

■ As Merck constitutes the proper standard, reconsideration of the Court's Order is unwarranted. While the Order notes Younger's holding that "inquiry notice" is the standard some courts in the District have adopted, in ultimately concluding that Lead Plaintiff's claim was not barred by the statute of limitations, the Order relies chiefly on the language in Bear Stearns that "a motion to dismiss will only be granted where uncontroverted evidence irrefutably demonstrates [that the] plaintiff discovered or should have discovered facts sufficient to adequately plead a claim[.]" Yi Xiang v. Inovalon Holdings, Inc., No. 16-CV-4923, 254 F.Supp.3d 635, 641, 2017 WL 2537819, at *3 (S.D.N.Y. May 23, 2017) (citing Bear Stearns, 851 F.Supp.2d at 763) (emphasis added). As Defendants correctly note, Bear Stearns applied the Merck standard rather than the "inquiry notice" standard. Id. at 762–63. As such, the fundamental logic of the Court's Order relies on the Merck standard in finding that Plaintiff adequately pled a claim, at this stage, which is not barred by the statute of limitations. Accordingly, the Court did not make a clear error in its analysis that would justify reconsideration of the Order.

■ In consequence, the only new information that Defendants provide that could alter the Court's prior analysis relates to an alleged 12 percent decrease in Inovalon stock price that occurred before May 8, 2015. Defendants allege that this decrease in the stock price alone was sufficient for Lead Plaintiff to properly plead damages and, as such, the statute of limitations ran from early May.[2]

While the Court can generally take judicial notice of changes in stock prices without converting a motion to dismiss to a motion for summary judgment, see Ganino v. Citizens Utilities Co., 228 F.3d 154, 167 (2d Cir. 2000), Defendants' argument is meritless. First, this information is not evidence that was unavailable to Defendants during their briefing of the motion to dismiss—they just did not previously raise it. Second, while Inovalon's stock price did generally decrease in the months leading up to May 8, 2015, the stock price actually went up on May 8, 2015, from $23.65 to $24.19, when Defendants allege Inovalon made certain disclosures that should have triggered the statute of limitations. See Yahoo! Finance, https://finance.yahoo.com/quote/INOV/ (last visited July 21, 2017). Third, Inovalon's stock price over the course of 2015 often fluctuated. While the price generally did decrease up to and after May 8, 2015, there was no single-day decline equivalent to the decline that occurred after Inovalon's August 5, 2015 disclosures. See id.

Fourth, as the Inovalon stock price actually went up on May 8, 2015, after the company's disclosures, it is unclear how, at that point, any decrease in the stock price resulted directly from the misrepresentations regarding Inovalon's tax rate. Finally, as the 12 percent decrease Defendants cite was a slow decrease over the course of a few months, not directly tied to any particular disclosures, this development appears to reflect a price decline before significant disclosures by Inovalon, which, as a general rule, cannot be charged to Defendants. See McMahan & Co. v. Wherehouse Entm't, Inc., 65 F.3d 1044, 1049 (2d Cir. 1995); Akerman v. Oryx

---

**2.** While Defendants also argue that stock price is unnecessary to plead damages, those arguments seem to re-hash points raised during the initial litigation of the motion to dismiss. (See Dkt. No. 68.) The arguments regarding the stock price decrease before May 8, however, do not appear to have been raised during the motion to dismiss briefing.

Commc'ns, Inc., 810 F.2d 336, 342 (2d Cir. 1987).

The Court therefore finds that Defendants have failed to show that the Court committed clear error in applying the Merck standard, to identify a legal precedent overlooked by the Court in its analysis, or to provide new evidence not considered by the Court's Order. On these grounds, reconsideration of the Court's Order is unwarranted.

### 3. Interlocutory Appeal

■ Defendants request that, if the Court finds that the Merck standard applies, which it does, the question of whether Lead Plaintiff's claims are time-barred by the statute of limitations be certified for interlocutory appeal. Defendants argue that, if an "inquiry notice" standard were to apply, Lead Plaintiff's claims would be time-barred and, consequently, an immediate appeal would advance the disposition of this case. Interlocutory appeal, however, would be appropriate only if the application of the "inquiry notice" standard would alter the Court's conclusion that Lead Plaintiff's claims are not time-barred.

■ The Court agrees with Lead Plaintiff that which standard is applied matters only in fringe cases. Indeed, as noted above, a few courts have withheld ruling on which standard should control, as the claims would be barred or allowed under either standard. See, e.g., Rudman, 217 F.Supp.3d at 724–27. Courts generally assess inquiry notice "under an objective standard, evaluated on a 'totality-of-the-circumstances analysis' .... However, inquiry notice may be found as a matter of law only when uncontroverted evidence clearly demonstrates when the plaintiff should have discovered the fraudulent conduct." Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co. Inc., 714 F.Supp.2d 475, 479 (S.D.N.Y. 2010)(internal citation and quotation marks omitted.)

While under an "inquiry notice" standard the question may be a closer one, the Court finds that Lead Plaintiff's claims would still not be time-barred. As noted in the Order, there were disclosures made prior to August 2015 regarding the change in tax liability. Additionally, a decline in stock price is not necessarily required to put a plaintiff on notice regarding a potential claim. See Freidus v. ING Groep N.V., 736 F.Supp.2d 816, 827–28 (S.D.N.Y. 2010), adhered to on reconsideration, No. 09 CIV. 1049, 2011 WL 4056743 (S.D.N.Y. Mar. 29, 2011), aff'd, 543 Fed.Appx. 93 (2d Cir. 2013), cert. granted, judgment vacated, —— U.S. ——, 135 S.Ct. 1698, 191 L.Ed.2d 671 (2015), aff'd, in part, vacated in part, 601 Fed.Appx. 59 (2d Cir. 2015), aff'd, 543 Fed.Appx. 93 (2d Cir. 2013), cert. granted, judgment vacated, —— U.S. ——, 135 S.Ct. 1698, 191 L.Ed.2d 671 (2015), aff'd in part, vacated in part, 601 Fed.Appx. 59 (2d Cir. 2015) (disclosures in a Form 6–K were sufficient to put the plaintiff on notice).

■ However, the absence of stock price movement can indicate that the plaintiff is not yet on inquiry notice or indeed in a position to "discover" facts giving rise to the alleged violation regarding any potential claim or misstatement. See Newman v. Warnaco Grp., Inc., 335 F.3d 187, 195 (2d Cir. 2003)("The Court's holding is further supported by the fact that Warnaco's stock price did not have any significant movement following the filing of the 1998 Form 10–K. .... This information, when combined with the references to SOP 98–5 in the 1998 Form 10–K and the various articles and analytical reports of which the Court has taken judicial notice, demonstrates that inquiry notice was not triggered by the 1998 Form 10–K.").

While Defendants again cite <u>Rudman</u> to argue that, under an "inquiry notice" standard, Lead Plaintiff's claims would be time-barred, the Court's Order clearly distinguished <u>Rudman</u>, noting "that the disclosures that occurred outside of the statute of limitations were also followed directly by the largest single-day decline of stock in the company's history." <u>Inovalon Holdings</u>, 254 F.Supp.3d at 642, 2017 WL 2537819, at *3 (internal citation and quotation marks omitted). Furthermore, the Court in Rudman, recognizing that the statute of limitations question was a close one, did not dismiss the complaint solely on statute of limitations grounds, but also analyzed why dismissal was warranted on alternate grounds. <u>See Rudman</u>, 217 F.Supp.3d at 724–27 ("Nonetheless, the Court will address why plaintiffs fail to state a claim on the merits under Sections 11, 12(a) (2), and 15 of the Securities Act as an independent ground for granting Defendants' motion to dismiss[.]").

<u>Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co. Inc.</u> is instructive. That case presented a similarly close question regarding whether the statute of limitations had run, with competing evidence available to support arguments that the claims were and were not time-barred. <u>See</u> 714 F.Supp.2d 475, 480 (S.D.N.Y. 2010). The Court declined to reach that question at the motion to dismiss stage, as "whether a plaintiff had sufficient facts to place it on inquiry notice is 'often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6)[.]' " <u>Id.</u> (quoting <u>LC Capital Partners, LP v. Frontier Ins. Group, Inc.</u>, 318 F.3d 148, 156 (2d Cir. 2003)).

In this case, if the "inquiry notice" standard were to apply, there is competing evidence regarding whether Lead Plaintiff should have been on notice regarding any potential claims, thus raising factual issues that would be inappropriate to resolve at the motion to dismiss stage. The Court is persuaded that, even under the "inquiry notice" standard, dismissal would be unwarranted. As Defendants' motion to dismiss on statute of limitations grounds would be unsuccessful under either standard, interlocutory appeal of this issue would not materially advance the ultimate termination of this litigation. Thus, the Court finds that certification of this question for interlocutory appeal would be inappropriate.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. Nos. 76, 77) of defendants Inovalon Holdings, Inc. ("Inovalon"); Keith R. Dunleavy, Thomas R. Kloster, Denise K. Fletcher, Andre S. Hoffmann, Lee D. Roberts, and William J. Teuber Jr. (collectively, the "Individual Defendants"), Goldman Sachs & Co., Morgan Stanley & Co. LLC, Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith, Incorporated, UBS Securities LLC, Piper Jaffray & Co., Robert W. Baird & Co. Incorporated, Wells Fargo Securities, LLC, and William Blair & Company, L.L.C. (collectively, the "Underwriter Defendants," collectively with Inovalon and the Individual Defendants, "Defendants") for reconsideration of the Court's Order denying Defendants' motion to dismiss (Dkt. No. 69) and for certification of interlocutory appeal is **DENIED.**

**SO ORDERED.**